**CYCLONE SAND AND GRAVEL CO., Darrell R. Crane, Toni R. Crane, and Mark E. Schneider, Appellants,**

v.

**ZONING BOARD OF ADJUSTMENT OF the CITY OF AMES, Story County, Iowa, Appellee,**

**Asgrow Seed Company, Intervenor.**

No. 83–795.

Supreme Court of Iowa.

June 13, 1984.

Lad Grove, Ames, for appellants.

John R. Klaus, Ames City Atty., for appellee.

Dale Sharp of Smith, Nutty, Sharp & Benson, Ames, for intervenor.

Considered by REYNOLDSON, C.J., and McCORMICK, SCHULTZ, CARTER and WOLLE, JJ.

SCHULTZ, Justice.

Shortly after the City of Ames adopted an ordinance requiring a special permit for various kinds of land uses, Cyclone Sand and Gravel Company (Cyclone) applied for a permit to extract sand and gravel from land located within the city limits. The Zoning Board of Adjustment of the City of Ames (Board) denied the application. Cyclone and the involved landowners, Darrell R. Crane, Toni R. Crane and Mark E. Schneider, filed a writ of certiorari in district court challenging the legality of the special use ordinance and the actions of the Board. A neighboring landowner, Asgrow Seed Company (Asgrow) intervened in support of the Board's decision. After trial, the district court dismissed the petition. We affirm.

In 1980, the landowners purchased two adjoining tracts of land totaling approximately eighty acres. The property lies in the flood plain of the Skunk River and is designated as an Agricultural/Greenbelt area under the city's land use policy plan. The tract lies adjacent to other farmland and an auto salvage yard and within several hundred feet of Duff Avenue, a street that is fronted by several businesses and a shopping mall. Although the land is now being used for row crops, it was specifically purchased for the purpose of operating an extraction pit and developing the land commercially. Sand and gravel extraction is presently the highest and best economic use of the property. This use is permitted by city zoning ordinances subject to the issuance of a permit by the Board.

In March 1982 Cyclone, as lessee, submitted an application for a permit to extract sand and gravel. The extraction site would involve approximately eighteen acres and upon completion of the removal process would be used as a reservoir. The permit application contained extensive details concerning the timetable for extraction, road construction for the estimated traffic flow onto adjoining streets, and the topography and condition of the site upon completion. The board held a hearing in April and denied the permit on the ground that the proposed use did not satisfy three of the general requirements specified in the ordinance regulating the granting of a special use permit.

In both its certiorari action and its appeal, Cyclone has mounted a two-prong attack on the Board's denial of its application. First, Cyclone challenges the constitutionality of the zoning ordinances. Cyclone also claims, even if the ordinances are constitutional, the board's action was illegal since it was not substantiated by the evidence before it.

I. In mounting its constitutional challenge, Cyclone contends the zoning ordinances are vague, overbroad and confiscatory because they give the Zoning Board unbridled discretion and thus permit arbitrary and unreasonable decisions in violation of equal protection and due process. U.S. Const. amends. V, XIV; Iowa Const. art. I, §§ 9, 6.

When an ordinance is challenged on constitutional grounds, a presumption of constitutionality exists that can only be overcome by negating every reasonable basis upon which the ordinance could otherwise be sustained. *Incorporated City of Denison v. Clabaugh*, 306 N.W.2d 748, 751 (Iowa 1981). To sustain a challenge based on vagueness, the aggrieved party must show that the language in the ordinance does not convey a sufficiently definite warning of proscribed conduct, when measured by common understanding or practice. *Id.* A statute is overbroad if its sweep encompasses expressive or communicative conduct protected by the First Amendment; consequently, ordinances not drawn with the requisite degree of narrow specificity

must necessarily fall. *Millsap v. Cedar Rapids Civil Service Commission*, 249 N.W.2d 679, 686 (Iowa 1977).

Although Cyclone's attack is aimed at portions of two different municipal ordinances, sections 9.4 and 29.45, we will limit our discussion to section 29.45 since the board refrained from finding any facts under or relying on section 9.4, the zoning ordinance regulating conditional uses of floodplain land. Section 29.45 sets out general standards that must be satisfied before the board can grant a special use permit. Specifically, it provides:

Basis for Determinations. Before a Special Use Permit application can be approved, it shall be established that the following general standards, as well as the specific standards outlined in each applicable portion of this section shall be satisfied.

(1) General Standards. The Planning and Zoning Commission and Zoning Board of Adjustment shall review each application for the purpose of determining that each proposed use meets the following standards and, in addition, shall find adequate evidence that each use on its proposed location will:

(a) Be harmonious with and in accordance with the general principles and proposals of the Land Use Policy Plan of the City of Ames.

(b) Be designed, constructed, operated and maintained so as to be harmonious and appropriate in appearance with the existing or intended character of the general vicinity and that such a use will not change the essential character of the area in which it is proposed.

(c) Not be hazardous or disturbing to existing or future uses in the same general vicinity and will be a substantial improvement to property in the immediate vicinity and to the community as a whole.

(d) Be served adequately by essential public facilities and services as highways, streets, police, fire protection, drainage structures, refuse disposal, water and sewage facilities, or schools.

(e) Not create excessive additional requirements at public cost for public facilities and services.

(f) Not involve uses, activities, processes, materials, and equipment or conditions of operation that will be detrimental to any person, property or general welfare by reason of excessive production of traffic, noise, smoke, fumes, glare, or odors.

(g) Be consistent with the intent and purpose of the zoning district in which it is proposed to locate such use.

(2) Conditions and Safeguards. The Zoning Board of Adjustment may impose such additional conditions and safeguards deemed necessary for the general welfare, for the protection of individual property rights, and for insuring that the intent and objectives of this chapter will be observed.

Although Cyclone's constitutional arguments are couched in terms of the facial invalidity of the statute, these contentions must necessarily rest on the unconstitutionality of the statute as applied to its permit application. *See State v. Willis*, 218 N.W.2d 921, 923 (Iowa 1974).

■ Since Cyclone has attacked the ordinance constitutionally, our evaluation must be made in light of the objectives sought to be accomplished by a municipality in providing for special use permits. A special use permit allows property to be used in a manner that is conditionally allowed by the ordinance. Thus, it differs from a variance provision which allows property to be used in a manner expressly prohibited by a zoning ordinance. Although certain uses are allowed, the granting of a permit is conditioned upon an applicant satisfying certain standards. The obvious purpose of this kind of ordinance is to set up a flexible procedure to regulate certain uses of property which, based on the individual fact situation, may or may not be in accord with the general purpose and intent of the municipality's land policy and the surrounding environment. As the

arbiter and dispenser of these permits, the Zoning Board serves in an ancillary role of implementing the city's land use policy and allocating land use to accomplish changes without intervention of a formal amendment of a zoning ordinance. *See City of Des Moines v. Lohner*, 168 N.W.2d 779, 784 (Iowa 1969), citing McQuillin, *Municipal Corporations*, Zoning § 25.160 (3d Ed. 1976).

Viewing the ordinance as a whole, we do not find it unconstitutionally vague. Cyclone does not claim the ordinance constitutes an unlawful delegation of legislative authority to the Board but rather contends that it grants unbridled discretion in the decision making process.

■ While the ordinance does rely on general standards, these guidelines are designed to allow the Board to make findings and determinations that are appropriate to the peculiar circumstances presented by each special use application. Moreover, the ordinance requires that a proposed use must conform to the general land use policy of the city, generally fit in with existing property uses in the vicinity and not be detrimental to other property owners or the general public. So limited, the ordinance is sufficiently specific since zoning standards need not be so detailed as to eliminate entirely any element of discretion from the Board's decision. As noted by one authority in commenting on ordinances designed to adjust uses:

> As a general rule, such marginal variances, must be consistent with the general purpose and intent of the zoning ordinance, and they must be of such character as to conserve the community welfare. A requirement that any extension of a use must be in harmony with the general purpose and intent of a zoning ordinance sets up a sufficiently primary and intelligible principle for action by a board. . . .

E. McQuillin, *Municipal Corporations*, Zoning § 25.176 (3d Ed. 1976).

We conclude that the ordinance is not unconstitutionally vague but rather necessarily sets out general language since it would be difficult, if not impossible, to foresee and delineate all circumstances in which a special permit should be granted or denied. Indeed, greater specificity would defeat the municipality's purpose of providing a flexible means to accomplish use changes without the necessity of a formal amendment.

In addition to its general attack on section 29.45, Cyclone also contends that specific portions of the ordinance are vague and indefinite. In particular, it singles out the term "harmonious" contained in subsections (a) and (b) and the "hazardous or disturbing to existing or future uses" language used in subsection (c).

■ A statute is not vague when the meaning of its terms can be fairly ascertained by reference to a dictionary or if the words themselves have a common and generally accepted meaning. The dictionary defines "harmonious" as "having the parts agreeably related." *Webster's New Collegiate Dictionary* (150th Ed. 1981). We believe this definition also conforms to the commonly understood meaning and when used in subsection (a) indicates that the proposed use must be agreeably related to the general principles of the city's land use policy. As used in subsection (b), the proposed use must be agreeably related to the surrounding area. In sum, we conclude the term "harmonious" is readily understandable and is not vulnerable to a vagueness challenge.

■ Nor do we find the "hazardous or disturbing to existing or future uses" language to be either vague or indefinite. This terminology in the context of subsection (c) plainly denotes that the contemplated use should not endanger or imperil existing property uses in the same general vicinity. As such, both the language and the underlying policy can be fairly understood.

■ Although Cyclone raises an overbreadth challenge to the ordinance generally and subsections (b) and (c) particularly, it fails to specify what constitutional right the alleged overbreadth infringes upon and

merely claims the zoning regulation burdens the property. Constitutional challenges must be specific. *State v. Willis,* 218 N.W.2d 921, 923 (Iowa 1974). We perceive no apparent overbreadth problems and find no merit in this contention.

II. Cyclone alleged that the Board's denial of the special use permit was illegal because of the unbridled discretion permitted by a vagueness and overbreadth of the ordinance and the lack of evidentiary support for their findings. We have determined that the ordinance was not unconstitutionally deficient in division I, and thus we will limit our examination in this division to whether the Board's decision was justified by the facts.

The Board has statutory power pursuant to Iowa Code section 414.12 to hear and decide exceptions. The remedy afforded an aggrieved party from the Board's decision is a hearing in district court on a petition for a writ of certiorari. *See* Iowa Code §§ 414.15–.18. Both parties cite and refer to *Weldon v. Zoning Board of City of Des Moines,* 250 N.W.2d 396 (Iowa 1977), which summarizes the court's authority in this kind of hearing as follows:

> Therefore the teaching of the *Anderson* [v. Jester, 206 Iowa 452, 221 N.W. 354] case is that in a certiorari proceeding in a zoning case the district court finds the facts anew on the record made in the certiorari proceeding. That record will include the return to the writ and any additional evidence which may have been offered by the parties. However, the district court is not free to decide the case anew. Illegality of the challenged board action is established by reason of the court's findings of fact if they do not provide substantial support for the board decision. If the district court's findings of fact leave the reasonableness of the board's action open to a fair difference of opinion, the court may not substitute its decision for that of the board.

*Id.* at 401.

Cyclone claims that the Board's decision was illegal because it was not properly based on the facts before it. It specifically challenges the Board's findings that Cyclone failed to meet the requirements of subsections (a), (b) and (c). Since the ordinance requires that all standards be met, the failure to satisfy even one of the requirements in section 29.45 is fatal to a permit application. Thus for reasons of brevity, we shall focus our discussion on the Board's decision concerning the requirements of subsection (c). In applying that standard to the evidence before it, the Board found:

> Three, and finally, the Board is not convinced, given the conflict in evidence, that the quarry would be a substantial improvement to property in the area. To the contrary, from the highly qualified testimony of expert witnesses, the Board is convinced that:
>
> 1. The proposed quarry would not only be disturbing to the existing Asgrow Seed Co. test plot operation but absolutely devastating to the degree that the test plot operation could no longer be effectively continued at its present location due to the differential in stress across the plots caused by dust from the quarry.
>
> 2. Future use of the land as a well field for the City of Ames water supply will be seriously jeopardized by removing the overburden, opening a pool of water and thereby exposing the entire aquifer to a threat of contamination from periodic flood waters in this floodway area, and a risk of contamination from runoff of adjoining fields.

Cyclone objected to this determination in its petition for writ of certiorari. After receiving the evidence at trial, the trial court entered lengthy findings of fact summarizing the evidence before it. The court concluded that the ordinance withstood constitutional attack, and went on to state that

> In this court's view, the Findings of Fact previously set forth in this decision leave the reasonableness of the Board's action open to a fair difference of opinion, and thus this court may not substi-

**784**

tute its decision for that of the Board.... In this court's view, the action of the Board in denying the special use permit is supported by substantial evidence.

■ Looking at the facts of this case, we agree with the trial court. Although Cyclone presented evidence that a sandpit would increase the tax base and provide a scarce commodity in useable quantities immediately accessible to the City, the two fighting issues were the hazard to the community and the adjoining landowners. Testimony was presented concerning the possibility of contamination of the city water supply by allowing extraction in the area of the aquifer that supplies the city wells. There was also evidence that the dust created by removing the sand and hauling it away would adversely affect adjoining landholders, particularly the Asgrow test seed corn plots. Conversely, Cyclone presented equally persuasive and conflicting evidence on both of these issues. Nevertheless, the Board found the pit would jeopardize the city's water supply and the dust would be disturbing to Cyclone's neighbors. After hearing further evidence, the trial court found that the reasonableness of the Board's action was open to fair difference of opinion and refused to substitute its decision for that of the Board.

Our scope of review is, as in ordinary actions, on assigned errors with the finding of the trial court having the force of a jury verdict. *Trailer City, Inc. v. Board of Adjustment*, 218 N.W.2d 645, 647–48 (Iowa 1974). The record in this case amply supports the finding by the trial court that the Board's action in denying the special use permit is supported by substantial evidence. The trial court was correct in refusing to substitute its judgment for that of the Board. Accordingly, the district court's decision dismissing the petition for writ of certiorari is affirmed.

AFFIRMED.