Don ACKMAN, et al., Appellants,

v.

**BOARD OF ADJUSTMENT FOR BLACK HAWK COUNTY,**
Appellee,

and

**Larry Anton, Ray Apel, Dave Strempke, Vern Luhring, and Glen Moore,**
Defendants,

and

**Basic Materials, Inc., Intervenor–Appellee.**

No. 97–1353.

Supreme Court of Iowa.

July 8, 1999.

Mark S. Rolinger of Redfern, Mason, Dieter, Larsen & Moore, P.L.C., Cedar Falls, for appellants.

Peter W. Burk, Assistant County Attorney, for appellee Board of Adjustment for Black Hawk County.

Eric W. Johnson of Beecher, Field, Walker, Morris, Hoffman & Johnson, P.C., Waterloo, for appellee Basic Materials.

Considered by HARRIS, P.J., and CARTER, LAVORATO, NEUMAN, and CADY, JJ.

NEUMAN, Justice.

This appeal concerns a decision by the Black Hawk County Board of Adjustment to issue a special use permit to intervenor, Basic Materials, Inc., for the operation of a limestone quarry in an "A" agricultural zoning district. Plaintiffs—property owners in the vicinity of the proposed quarry—challenged the decision by petition for writ of certiorari in the district court. By amended petition, plaintiffs also sought a writ of mandamus to compel the board of adjustment to revoke the issuance of the special use permit based on a more recent amendment to the zoning ordinance.

The district court denied the plaintiffs' petitions for relief. On appeal from the court's ruling, plaintiffs make the following claims: (1) the court erred in its refusal to revoke the special use permit based on the ordinance in effect at the time of decision; (2) the county's prior zoning ordinance violated Iowa Code chapter 335 (1997); (3) the ordinance authorizing the special use permit contradicts the county's comprehensive land use plan; (4) the ordinance, as applied, constituted an illegal delegation of zoning power to the board of adjustment; (5) the ordinance was unconstitutionally vague; and (6) the board's decision to grant the special use permit was arbitrary, capricious, and unreasonable. Finding no merit in any of these contentions, we affirm the judgment of the district court.

## I. Background Facts and Proceedings.

Basic Materials, Inc., operates a fifty-year-old limestone extraction facility in

Black Hawk County known as the Yokom Quarry. Recognizing the quarry's depleting store of rock, Basic Materials sought to open and operate a new quarry roughly one mile from the old one. The new site, on property owned by Kathryn Messerly, is the subject of this appeal.

When Messerly and Basic Materials first sought permission to open the quarry in 1994, the Black Hawk County zoning ordinance provided that quarries were a specially permitted use only in an "M" manufacturing district. Messerly's property was zoned "A" agricultural. The planning and zoning commission preliminarily recommended against Basic Materials' application to rezone the property. The commission found it inconsistent with the county's comprehensive zoning policy to rezone prime agricultural land, *i.e.*, property with a corn suitability rating (CSR) in excess of fifty, from agricultural to manufacturing. Basic Materials therefore withdrew its application to rezone the site.

Subsequently the county board of supervisors passed a revised zoning ordinance which, among other changes, moved the special permit procedure for quarries from the "M" manufacturing district to the "A" agricultural district. The change, implemented at the suggestion of the planning and zoning commission working in cooperation with the Northland Regional Council of Governments, was intended to ensure that abandoned quarry sites would eventually revert to agricultural use, not manufacturing. In other words, the change would prevent commercial use of the land after the quarried resource was exhausted.

So, in January 1996, Basic Materials filed an application for a special use permit to establish a quarry on Messerly's land in the "A" agricultural district. Again an initial review of the application was made by the planing and zoning commission. A hew and cry went up among several neighboring landowners. Following two lengthy hearings, well attended by those opposing and those supporting the quarry, the four-member commission split evenly on whether a special permit should be granted. It voted to forward the application to the board of adjustment with its findings but no recommendation. Accompanying the commission's decision was a list of nine conditions unanimously deemed important if the development went forward.[1]

When the board of adjustment convened a month later, it had before it the numerous letters and exhibits produced by both sides at the commission hearings. Two of the board members visited the site.. Plaintiffs, personally and by counsel, urged concerns about highway safety, increased noise, dust and traffic; structural damage to their homes from blasting; potential contamination of private wells; and overall devaluation of their properties. Basic Materials countered with proof of the state and federal regulations with which it must comply; evidence related to the limestone's location vis á vis local aquifers; and evidence concerning noise levels and frequency of charges used in the extraction process. Basic Materials also highlighted its spotless record in operating the Yokom Quarry, noting many of the protesting residents lived within a one-mile radius of it yet were unaware of its existence.

1. The conditions were:
    1. The property surrounded with a fence adequate to keep people out especially children.
    2. Trees of a variety and spaced to control noise and dust.
    3. A berm placed around the site.
    4. Signs posted at the entrance to the site warning traffic of trucks.
    1. The company pay costs for placing blinking lights at locations determined by the county as needed.
    6. The company.will notify all residents within one mile when blasting is proposed.
    7. The company will have private wells in the area periodically spot checked for contamination and determination of the source.
    8. The company will keep a dust retardant on roads both on site and any public roads where nt hard surfaced.
    9. The company will work with the residents in the area.

The board then discussed, in closed session, the six criteria for granting a special use permit.[2] Each member commented on each factor. Although no roll call vote was taken, a majority of the board members responded positively on each standard. The board then approved the special use permit by a three-to-two vote, subject to the nine conditions recommended by the planning and zoning commission.

Plaintiffs challenged the board's decision in district court by way of certiorari. *See* Iowa Code § 335.18 (allowing persons aggrieved by board of adjustment ruling to challenge alleged illegality in the decision). Their petition sought to restrain Basic Materials from taking action on its special use permit until a decision was reached on the merits. Eventually the parties agreed that Basic Materials would refrain from commencing construction on the quarry and the court would toll the limitation period for action on a special use permit pending resolution of the controversy.[3]

Meanwhile the planning and zoning commission revisited the question of quarries in agricultural zones, recommending a revision of the 1995 zoning ordinance to the board of supervisors. The revision established a new "A–Q" agricultural-quarry district. Public utility structures would be the principal permitted use in the zone, but quarries would be allowed upon issuance of a special permit by the board of adjustment. The amendment eliminated the former provision authorizing special use permits for quarries in an "A" district.

The revised ordinance took effect June 10, 1997, while plaintiffs' certiorari action was pending. Thus plaintiffs urged, by way of amendment to their petition, that the revised ordinance applied. They further sought a writ of mandamus compelling the board to revoke the permit previously issued.

Following trial of the certiorari and mandamus actions, the district court concluded that the revised ordinance's savings clause protected Basic Materials' special use permit. The court also rejected plaintiffs' statutory and constitutional challenges to the board's decision. This appeal by plaintiffs followed.

## II. Scope of Review.

By statute, a challenge to a decision rendered by a county board of adjustment is tried de novo in the district court. Iowa Code § 335.21; *see Vogelaar v. Polk County Zoning Bd. of Adjustment*, 188 N.W.2d 860, 863 (Iowa 1971) (review in district court is de novo to extent additional testimony needed for proper disposition of questions of illegality raised by certiorari petition); *accord Montgomery v. Bremer County Bd. of Supervisors*, 299 N.W.2d 687, 692 (Iowa 1980). Our review on appeal from the district court, however, is limited to the correction of errors at law. *Vogelaar*, 188 N.W.2d at 863. We are bound by the district court's factual findings if supported by substantial evidence in the record. *Id.; see United States Cellular Corp. v. Board of Adjustment*, 589 N.W.2d 712, 718 (Iowa 1999) (applying

2. The board's meeting minutes cited the six criteria as follows: (1) that the establishment, maintenance, or operation of the quarry will not be detrimental to or endanger the public health, safety, morals, comfort, or general welfare; (2) that the quarry will not be injurious to the use and enjoyment of other property already permitted, nor substantially diminish and impair property values within the neighborhood; (3) that the establishment of the quarry will not impede the normal and orderly development and improvement of the surrounding property for uses permitted in the district; (4) that adequate utilities, access roads, drainage and/or necessary facilities have been or are being provided; (5) that adequate measures have been or will be taken to provide ingress and egress so designed as to minimize traffic congestion in the public streets; and (6) that the quarry shall, in all other respects, conform to the applicable regulations of the district in which it is located, except as such regulations may, in each instance, be modified by the Board of Adjustment.

3. Under the ordinance, a special use permit expires unless action is taken on it within one year from issuance.

same scope of review in context of challenge to city zoning board of adjustment decision).

### III. Issues on Appeal.

█ A. *Vested rights/time-of-decision rule.* When Basic Materials secured its special use permit from the board of adjustment, the affected property was located in an "A" agricultural district. By the time plaintiffs' writ of certiorari was heard by the district court, however, the board of supervisors had amended the zoning ordinance to authorize quarries by special use permit only in a new "A–Q" zone. If the new ordinance applied, Basic Materials would be required to first apply to the board of supervisors to rezone the property, then attempt to secure a special use permit for the quarry. Thus plaintiffs argued before the district court, and now urge on appeal, that the amended ordinance—not the original one—should prevail, thereby invalidating the special permit previously issued.

This "time-of-decision rule" urged by plaintiffs, but rejected by the district court as inapplicable to this case, was recently adopted by this court in *United States Cellular Corp.,* 589 N.W.2d at 715. Employed by a majority of jurisdictions, the rule rests on the theory that courts should not authorize construction contrary to legislative provisions in effect at the time of decision. *Id.* at 715–716. The rule also recognizes the longstanding principle that even a validly issued permit may be revoked by zoning authorities based on a change in the zoning laws so long as the permittee has not made substantial improvements to the property—that is, acquired "vested rights"—in reliance on the permit. *Id.; accord City of New Hampton v. Blayne–Martin Corp.,* 594 N.W.2d 40, 44 (Iowa 1999).

█ The time-of-decision rule has its exceptions, however. As already noted, it does not apply where the property owner rightly claims vested rights in a former zoning classification. And, in *United States Cellular,* we held the rule has no application where the zoning authority's refusal to issue a special permit is done in bad faith. *United States Cellular Corp.,* 589 N.W.2d at 721.

Here the district court recognized an element of unfairness in plaintiffs' reliance on the doctrine given Basic Materials' voluntary agreement to forego construction—*i.e.,* development of vested rights on a validly issued permit—pending resolution of the controversy at trial and on appeal. Moreover, plaintiffs had agreed the court should toll the one-year limitation period for action taken on a special permit. Yet the court did not rely on estoppel, as plaintiffs suggest, to rule in Basic Materials' favor. The court instead refused to apply the time-of-decision rule because of a provision in the updated ordinance itself. The ordinance's savings clause states in relevant part:

A. General Intent.

Within the districts established by this Ordinance, or amendments that may later be adopted, there exist lots, structures, buildings, and uses of land which were lawful before this Ordinance was passed or amended, but which would be prohibited, regulated or restricted under the terms of this Ordinance or future amendments.

1. It is the intent of this Ordinance to permit these nonconformities to continue until they are removed or abandoned, but not to encourage their survival. It is further the intent of this Ordinance that nonconformities shall not be enlarged upon, expanded or extended, nor be used as grounds for adding other structures or uses prohibited elsewhere in the same district.

. . . .

F. Nonconforming Status Exemption.

The following exemptions shall apply to any use that would be deemed nonconforming by the provisions of this section, subject to the following provisions:

. . . .

2. Any use for which a special permit has been issued, without further action.

Faced with the plain language of this exemption, plaintiffs claim the words "without further action" rendered the clause inapplicable once they challenged the permit's issuance. We think the district court had the more logical explanation for the phrase. It reasoned "without further action" meant "that the use authorized by the special permit will be saved without any further action by the permit holder or the Board of Adjustment, who are the only formal parties to the permit application process." We agree.

Unlike the situation in *United States Cellular*, where no valid permit had yet been issued, Basic Materials reached the district court with its permit in hand. We thus hold that although the time-of-decision rule might ordinarily apply in this situation, the revised ordinance's own savings clause protects the nonconforming use for which the permit had been issued. Plaintiffs have failed to establish error in the district court's ruling on this ground. We therefore examine the balance of plaintiffs' contentions in light of the unamended 1995 ordinance.

■ B. *Alleged violation of Iowa Code chapter 335.* Iowa Code chapter 335 authorizes the establishment of county boards of adjustment and provides that a county board of supervisors may empower its board of adjustment to make special exceptions to the terms of the zoning ordinance, so long as the exceptions are "in harmony with [the ordinance's] general purpose and intent and in accordance with the general or specific rules therein contained." Iowa Code § 335.10. County zoning regulations must be "made in accordance with a comprehensive plan" and, among other requirements, be "designed to preserve the availability of agricultural land." Iowa Code § 335.5. Plaintiffs contend on appeal that Black Hawk County's 1995 zoning ordinance fails to meet these statutory standards. They claim a quarry operation is essentially an industrial use and, by its very nature, cannot be harmonized with an agricultural district.

■ The principal weakness in plaintiffs' argument is its failure to recognize the multiple land use objectives outlined in section 335.5 as well as the dynamic policies underlying the county's comprehensive plan. "Zoning is not static." *Montgomery*, 299 N.W.2d at 695. A board of adjustment serves the fundamental role of land use allocator, applying special use exceptions to accomplish change without necessitating formal zoning amendments by the board of supervisors. *City of Des Moines v. Lohner*, 168 N.W.2d 779, 784 (Iowa 1969). The power to grant special uses must of course be governed by adequate guidelines. *Id.* But if a board of adjustment fully considers the problem presented, weighing the public's need, changing conditions, and the use of similar land in the area, then the duty to zone in accordance with a comprehensive plan has been met. *Montgomery*, 299 N.W.2d at 695.

Although plaintiffs argue vigorously to the contrary, the record supports the trial court's finding that the county's zoning ordinance implements—rather than defeats—chapter 335's objectives. The ordinance specifically states its intent to provide local citizens and governments with the means of protecting agricultural land from "nonagricultural development pressures." As local officials work to reconcile competing land use objectives, they are guided by six standards, recited later in this opinion, which must be met before a special use permit may be issued.

Substantial evidence in the record supports the board's finding that a quarry operation, while not agricultural per se, is a use incidental to agriculture. All agreed that quarries furnish lime for enriching farmers' fields, as well as rock necessary to the construction of farm-to-market roads and bedding for water and sewage

pipelines. Yet the siting of a quarry is not unlimited. As one board member aptly observed, "God puts the rock where God wants to put the rock, and we can't do anything about it now." Evidence reveals that the quarry currently serving the area has been exhausted. Thus the board, guided by statutes and county policies, was required to not only consider the availability of agricultural land but to consider other public welfare interests including highway use, conservation of energy resources, and the suitability of the area for providing essential natural resources. *See* Iowa Code § 335.5.

Here the county zoning ordinance specifically balanced these competing interests by permitting quarries as a special use in an agricultural district, thereby minimizing the commercial impact on the land once the rock resource has been exhausted. Like the district court, we believe this policy determination implements, rather than violates, state statutes. Plaintiffs' arguments to the contrary are simply not persuasive.

■ C. *Alleged violation of county comprehensive plan.* In a similar vein, plaintiffs contend the ordinance providing for quarries as a special permitted use in an "A" agricultural district offends the county's comprehensive plan and is, therefore, illegal. To support their argument, they cite the following two paragraphs from the policy statement accompanying the comprehensive land use plan:

1. It **shall** be a **policy of Black Hawk County** that **only agricultural uses** or those uses **incidental to agriculture** shall be allowed on prime land. Prime land in Black Hawk County is defined as soil with a Corn Suitability Rating [CSR] of 50 or above.

2. It **shall** be a policy of Black Hawk County to encourage residential, **commercial and industrial** development within **incorporated areas** utilizing municipal utilities. Development in the unincorporated areas of the county **shall** be directed to-ward existing areas which have been **rezoned** for residential, **commercial** and **industrial uses** but are vacant.

(Emphasis added by plaintiffs.) Plaintiffs argue these paragraphs "unequivocally require[ ]" that land having a CSR of fifty or above be restricted to agricultural use and industrial development must occur only in incorporated areas. The district court rejected the argument on two grounds: (1) application of the guidelines requires more flexibility than plaintiffs concede, and (2) a quarry operation is a use incidental to agriculture.

The district court's ruling enjoys ample support in the record. For the reasons already discussed, a limestone quarry operation may reasonably be considered incidental to agriculture. Second, plaintiffs' argument that the policies must be applied strictly would undermine their very purpose—to guide zoning officials in harmonizing competing land uses. Strict adherence to the statements could actually negate other objectives of the comprehensive plan. *See Cyclone Sand & Gravel Co. v. Zoning Bd. of Adjustment,* 351 N.W.2d 778, 781–82 (Iowa 1984) ("The obvious purpose of this kind of ordinance is to set up a flexible procedure to regulate certain uses of property which, based on the individual fact situation, may or may not be in accord with the general purpose and intent of the [county's] land policy and the surrounding environment.").

With much of Black Hawk County's land rated high on the CSR scale, it would be difficult to find limestone in an area not considered prime agricultural. Yet the record furnished proof of the need for limestone and rock for agricultural and road construction use in the county and surrounding areas. The fact that the board of supervisors' 1995 ordinance actually took quarries out of excepted use in the "M" district and put them in the "A" district demonstrates the board's interest in following the comprehensive plan. By doing so, the board of supervisors has

prevented manufacturing districts from cropping up in the unincorporated areas of the county after a quarry is depleted, thereby avoiding piecemeal zoning. *See Wolf v. City of Ely,* 493 N.W.2d 846, 849 (Iowa 1992) (purpose of comprehensive plan is to control and direct use and development of property by dividing it into districts according to present and potential uses). We therefore find no error in the district court's conclusion that the 1995 zoning ordinance did not violate the county's comprehensive plan.

■ D. *Illegal delegation of zoning power.* The plaintiffs next assert that the 1995 ordinance impermissibly delegated power from the board of supervisors to the board of adjustment. The argument is premised on plaintiffs' belief that authorizing a special use permit for a quarry in an "A" agricultural district is inconsistent with the uses otherwise permitted within that classification. Plaintiffs thus argue the board of supervisors has effectively vested the board of adjustment with zoning authority. The district court found no merit in this contention, and neither do we.

As already noted, the record provides substantial evidence that the operation of a quarry may be harmonized with an agricultural district and does not conflict with the county's plan and policy statements. By statute the board of supervisors is empowered to adopt zoning ordinances and to later make changes and amendments, carrying out essentially legislative power and process. *See* Iowa Code §§ 335.3–.7; *Boomhower v. Cerro Gordo County Bd. of Adjustment,* 163 N.W.2d 75, 77 (Iowa 1968). Complementing this power, the board of adjustment concerns itself with administering the zoning ordinance and may be authorized by the board of supervisors to make special exceptions to the ordinance in accordance with Iowa Code sections 335.10 and .15. *See Boomhower,* 163 N.W.2d at 77.

When it amended the ordinance in 1995, the Black Hawk County Board of Supervisors included quarries as a specially per-

mitted use in the "A" agricultural district. Thereafter the responsibility fell to the board of adjustment, not the supervisors, to grant special use permits for that purpose. *See* Iowa Code § 335.15 (vesting power to grant special permits in the board of adjustment). In fact, it would have been illegal for the board of supervisors to exercise that power *Lohner,* 168 N.W.2d at 783.

Quarries naturally exist under the surface of agricultural land. By classifying quarries as a special use exception in the "A" agricultural district, the board of supervisors fulfilled its zoning duty. Thereafter the board of adjustment's role was limited to determining whether a permitted use should be authorized; no "rezoning" was involved. *See id.* at 784 ("The fundamental purpose of the special exception or use is to serve in an ancillary role as an allocator of land use, and is generally used to accomplish use changes without the intervention of a formal amendment by the [board of supervisors]."). The court committed no legal error in so ruling.

■ E. *Unconstitutional vagueness.* The plaintiffs next mount an unconstitutional vagueness challenge to the zoning ordinance under which Basic Materials' special use permit was granted. The vagueness, they claim, stems from the ordinance's failure "to require that the special use comply with Black Hawk County Policy Statement." This failure, plaintiffs contend, means the ordinance gives insufficient guidance to the public about the circumstances under which it can expect a special use to be granted or denied.

■ When an ordinance is challenged on constitutional grounds, a presumption of constitutionality exists that can only be overcome by negating every reasonable basis upon which the ordinance could otherwise be sustained. *Cyclone Sand & Gravel Co.,* 351 N.W.2d at 780. To sustain a challenge based on vagueness, the aggrieved party must show that the language in the ordinance does not convey

a sufficiently definite warning of proscribed conduct, when measured by common understanding or practice. *Id.* In other words, when persons must necessarily guess at the meaning of the statute and its applicability, the statute is unconstitutionally vague. *Greenawalt v. Zoning Bd. of Adjustment,* 345 N.W.2d 537, 545 (Iowa 1984).

*Cyclone,* like the case before us, involved a dispute over issuance of a special permit for a quarry. And, as in the present case, the board of adjustment relied on seven general standards contained in the pertinent zoning ordinance, plus additional conditions and safeguards, to reach its decision. *See Cyclone Sand & Gravel Co.,* 351 N.W.2d at 781. Affirming the district court's refusal to overturn the board's denial of the permit on vagueness grounds, we said:

> [T]he ordinance is not unconstitutionally vague but rather necessarily sets out general language since it would be difficult, if not impossible, to foresee and delineate all circumstances in which a special permit should be granted or denied. Indeed, greater specificity would defeat the [county's] purpose of providing a flexible means to accomplish use changes without the necessity of a formal amendment.

*Id.* at 782.

Similar to the ordinance at issue in *Cyclone,* the Black Hawk County zoning ordinance describes the creation, appointment and powers and duties of the board of adjustment; requires approval by the board of adjustment for commercial extraction use; and sets out the standards applicable by the board before granting a special use permit. Those standards follow:

> Standards. No special exception shall be granted by the Board of Adjustment unless such Board shall find:
> 1. That the establishment, maintenance, or operation of the special exception will not be detrimental to or endanger the public health, safe-

ty, morals, comfort, or general welfare;

> 2. That the special exception will not be injurious to the use and enjoyment of other property already permitted, nor substantially diminish and impair property values within the neighborhood;
> 3. That the establishment of special exceptions will not impede the normal and orderly development and improvement of the surrounding property for uses permitted in the district;
> 4. The adequate utilities, access roads, drainage and/or necessary facilities have been or are being provided;
> 5. That adequate measures have been or will be taken to provide ingress and egress so designed as to minimize traffic congestion in the public streets; and,
> 6. That the special exception shall, in all other respects, conform to the applicable regulations of the district in which it is located, except as such regulations may, in each instance, be modified by the Board of Adjustment.

In keeping with the ordinance, and pursuant to the recommendations made by the planning and zoning commission, the Black Hawk County Board of Adjustment made a finding under each standard. A majority vote of the members of the board then approved Basic Materials' permit along with the additional conditions recommended by the commission under standard six. The nine additional conditions took into account many of the plaintiffs' concerns about the operation of a quarry near their residences. The additional conditions require Basic Materials to implement extra safety measures such as building a fence around the quarry, planting trees to control noise and dust, rectifying traffic problems, and spot-checking nearby wells for contamination. These conditions were imposed based on the plaintiffs' concerns,

despite the lack of hard evidence that the problems would ever arise.

We find nothing unconstitutionally vague about this scheme of addressing a zoning controversy. The six identified standards are general enough to deal with unforeseeable circumstances that may arise and yet are not so specific that they defeat the county's desire to provide a flexible means of accomplishing use changes without rezoning. We find no error in the district court's ruling on this point.

**F. *Arbitrary, capricious and unreasonable decision.*** Finally, plaintiffs claim the decision of the board of adjustment, affirmed by the district court, was arbitrary, capricious, unreasonable and not based on substantial evidence. They fault the planning and zoning commission's failure to recommend denial of the special use permit (as it had in connection with Basic Materials' application to rezone in 1994) and criticize the board of adjustment's meeting minutes as woefully inadequate for judicial review. Additionally the plaintiffs attack the zoning administrator's failure to provide the board of adjustment with all the exhibits *in advance of* the hearing as proof of an arbitrary and capricious proceeding.

A board of adjustment's decision enjoys a strong presumption of validity. If the reasonableness of the board's action is "open to a fair difference of opinion, the court may not substitute its decision for that of the board." *Cyclone Sand & Gravel Co.*, 351 N.W.2d at 783 (quoting *Weldon v. Zoning Bd. of City of Des Moines*, 250 N.W.2d 396, 401 (Iowa 1977)).

We have already described at some length the procedures followed and standards applied as the planning and zoning commission, and then the board of adjustment, worked toward resolution of the controversy before us. Both the planning and zoning commission, and board of adjustment, held hearings on this matter. Additional testimony regarding the administration of the county zoning ordinance was presented to the district court. Although the board of adjustment's decision making might have been eased by having the documentary proof available in advance of its hearing, nothing in this record suggests more advance preparation would have changed the board's decision. The board members were clearly mindful of their duties, the pertinent ordinances, and the competing concerns of the applicant and its opponents. All appear to have been considered, thoroughly and thoughtfully.

In sum, nothing about these proceedings could fairly be characterized as arbitrary or capricious. The board's decision, though not unanimous, is amply supported by the record. We thus find no basis for setting aside the board's issuance of the special use permit to Basic Materials and, accordingly, we affirm the judgment of the district court.

**AFFIRMED.**