**W & G McKINNEY FARMS, L.P., Appellant,**

v.

**DALLAS COUNTY BOARD OF ADJUSTMENT, Dallas County, and Hallett Construction Company d/b/a Hallett Materials, Appellees.**

No. 02–1502.

Supreme Court of Iowa.

Jan. 22, 2004.

James V. McKinney of McKinney Law Offices, P.C., Waukee, for appellant.

James E. Brick and James E. Nervig of Gentry, Bowers, Swartz, Stoltze, Schuling, Levis, P.C., Des Moines, for appellees Dallas County Board of Adjustment and Dallas County.

Thomas D. Hanson and Barry A. Russell of Hanson, Bjork & Russell, L.L.P., Des Moines, for appellee Hallett Construction Company.

WIGGINS, Justice.

This appeal involves the decision by the Dallas County Board of Adjustment (Board) to grant a conditional use permit to Hallett Construction Company d/b/a Hallett Materials (Hallett) for the extraction of sand and gravel from a parcel of land located in Dallas County. W & G McKinney Farms, L.P. (McKinney) petitioned the district court for a writ of certiorari challenging the Board's issuance of the conditional use permit. The district court denied McKinney's request for relief, determining the Board acted properly in granting the conditional use permit to Hallett. McKinney appeals the district court's decision claiming the issuance of the conditional use permit by the Board is inconsistent with the *Comprehensive Plan for the Unincorporated Area of Dallas County* (Comprehensive Plan). Finding McKinney's claim without merit, we affirm the district court's judgment, which approved and confirmed the issuance of the conditional use permit by the Board.

## I. Background Facts and Proceedings.

Hallett requested a conditional use permit to extract sand and gravel on a parcel of land located in unincorporated Dallas County. This property is located on the north bank of the Raccoon River in southeast Dallas County. It is zoned A–2,

which is an Agriculture/Floodplain/Conservation District. The Dallas County zoning ordinance allows the mining and extraction of minerals and raw materials, including sand and gravel pits, as a conditional use in an A–2 zoning classification.

McKinney owns land located to the north and east of Hallett's property that is being developed for commercial use. Highway F90 and a railroad right of way separate McKinney's property from Hallett's property. McKinney advertises its development as having multiple zoning accommodating professional-office space, business-park space, flex space, retail, medium-density residential or light industrial. It is largely undeveloped except for the Des Moines Area Community College facility located on the eastern edge of the property. The Des Moines Area Community College facility is approximately two miles from Hallett's site. McKinney also owns another piece of property containing a miniature golf course and driving range approximately one and a half miles east of the Hallett entrance on the south side of Highway F90.

An old gravel pit, currently a swimming area called Clear Water Beach, lies south of the driving range. Two gravel pits are located on the south side of the Raccoon River approximately one mile east of Clear Water Beach. One of these gravel pits is still in operation. A nursery garden lies adjacent to the Hallett property on the east. On the south side of the river is the River Oaks residential development. Greenbelts located on the north and south banks of the Raccoon River separate the River Oaks development from Hallett's site. The residence closest to Hallett's property is about 3200 feet from the Hallett site.

The writ returned in the district court reflects a great deal of history surrounding the granting of the conditional use permit.

In the summer of 2000, Hallett voluntarily agreed to annex its property into the city of West Des Moines. As a condition of the annexation, Hallett requested a conditional use permit to operate the sand and gravel pit. After a public hearing, the West Des Moines Plan and Zoning Commission recommended approval of the conditional use permit with restrictions. The West Des Moines City Council disagreed with the Plan and Zoning Commission's recommendation and refused to issue the conditional use permit. Upon West Des Moines' refusal to issue the conditional use permit, Hallett withdrew its consent to the voluntary annexation.

In September 2000 Hallett requested a conditional use permit from Dallas County. The Dallas County zoning ordinances in effect at the time of this request empowered the Board of Supervisors (Supervisors) to issue conditional use permits. In December 2000 the Supervisors approved the conditional use permit subject to certain restrictions. McKinney filed an action alleging the Iowa Code only grants the power to issue conditional use permits to the Board. In response to that lawsuit, the Supervisors referred Hallett's application for a conditional use permit to the Board. The Board approved the conditional use permit subject to the same restrictions.

In July 2001 the district court found the Dallas County statutory scheme to be inconsistent with Iowa law and invalidated the conditional use permit issued to Hallett by the Supervisors. In response to this ruling, the Supervisors amended its zoning ordinances giving the Board the power to issue conditional use permits.

In October 2001 Hallett resubmitted its application to the Board under the amended ordinance. On October 17 the Board held a public hearing on the application. By a unanimous vote the Board approved

the conditional use permit subject to the following conditions:

1. The use of electric pump dredge and electric de-watering equipment in order to reduce noise levels produced from this site. The backup alarms for equipment owned/operated by the applicant shall be set to the lowest (quietest) setting which still meets Federal safety standards.

2. The use is limited to operations between the hours of 6:00 a.m. to 6:00 p.m. on weekdays and 8:00 a.m. to 1:00 p.m. on Saturdays with no operation allowed on Sundays. When electricity is available, no diesel equipment may be used on site if there is suitable electric equipment that can do the job. This is intended to reduce the noise of operations and to limit their duration to daytime hours during the week and limited hours on weekends.

3. All site lighting shall be downward facing to reduce glare to surrounding properties and the site lighting shall not be allowed to exceed one (1) foot candle at the property lines.

4. The construction of a twelve (12) foot high landscaped berm along the north property line. The berm shall undulate (horizontally and vertically) in places to provide visual interest and the majority of the landscaping shall be planted in front of the berm (Grand Avenue side) to allow the berm to be removed after the operation ceases, without eliminating the established landscape. Some of the landscaping shall be planted on the berm in locations where it would look natural to remain after the mining oper-

ations cease. The side slopes of the berm shall not exceed 3:1 and shall be decreased in some areas to approach 8:1 to eliminate the levee appearance. Additional landscaping material shall be clustered in the lower undulations to offset the loss of berm height.

5. Urethane or similar noise reducing material shall be used to line all chutes.

6. Install a sprinkler system that will wet the haul road surface as needed, and use a water truck or other dust suppressing measure on site to mitigate any dust problems.

7. The Owner-developer will develop a reclamation plan for the property after consultation with the Dallas County Conservation Commission or a group commissioned by the Dallas County Conservation Commission.

8. Provide an irrevocable offer of dedication of the entire property to the County, or another entity acceptable to the County, for use as a park or for other conservation purposes after the mining operation and reclamation obligations are complete.

9. To have no use take place in the floodway portion of the property (so vegetation floodway remains as a buffer).

10. To require that if and when an arterial road is built running North and South thru or along this property, that a buffer and berm be put in along it.

11. The mining operation shall be limited to ten years from the date this permit is granted, and all reclamation shall be completed no later than two years following the termination of the mining operation.

12. Exclude from mining area 150 feet from the fence line representing the southern edge of the south side of the right of way of county road on F90.

13. Conservation Fund. Owner-developer agrees to pay into a County designated fund an amount equal to $.10 per ton of all aggregate sold from the permitted site. This amount shall be paid annually. The fund shall be used for conservation purposes as appropriated by the Dallas County Board of Supervisors. This Conservation Fund is in addition to Owner-developer's obligation to reclaim the site under the terms of the permit and would be in addition to the reclamation bond, which Owner-developer would be obligated to file with the State of Iowa as a condition for issuance of a mining permit.

14. Reclamation Bond. Upon commencement of mining, Owner-developer will post a $500,000.00 bond to secure its obligation to reclaim the property according to the reclamation plan to be developed in conjunction with the Dallas County Conservation Board. The Reclamation Bond is in addition to any reclamation bond required for a mining permit under Iowa law.

McKinney brought an action in the district court challenging the Board's decision. The district court approved and confirmed the acts and decision of the Board in granting a conditional use permit with restrictions to Hallett. McKinney appeals this decision.

## II. Issue.

The only issue raised by McKinney on appeal is whether the issuance of the conditional use permit by the Board complied with the Comprehensive Plan.

## III. Scope of Review.

■ Our review of the district court's ruling is limited to correction of errors at law. Iowa R.App. P. 6.4. The district court's factual findings are binding on appeal if they are supported by substantial evidence. *Ackman v. Bd. Of Adjustment*, 596 N.W.2d 96, 100 (Iowa 1999). If the reasonableness of the board's action is "open to a fair difference of opinion, the court may not substitute its decision for that of the board." *Cyclone Sand & Gravel Co. v. Zoning Bd. of Adjustment*, 351 N.W.2d 778, 783 (Iowa 1984).

## IV. Analysis.

The Dallas County Zoning Ordinance divides Dallas County into a number of zoning districts. *Dallas County, Iowa, Ordinances* ch. 45 (2001). Each zoning district has its own particular set of district regulations. *Id.* The A–2 Agricultural/Floodplain/Conservation District allows sand and gravel pits as a conditional use. *Dallas County, Iowa, Ordinances* § 45.10(2.5). The Board has the authority to issue a conditional use permit to operate a sand and gravel pit in an A–2 District. *Id.*

■ The purpose of conditional use permits is to provide for flexibility in what otherwise would be the rigidity of zoning ordinances, while at the same time controlling troublesome aspects of somewhat incompatible uses by requiring certain restrictions and standards. *Willett v. Cerro Gordo County Zoning Bd. of Adjustment*, 490 N.W.2d 556, 560 (Iowa 1992). An application for a conditional use permit must meet all conditions of an ordinance. The failure to satisfy even one of the ordinance's conditions is fatal to a permit application. *Cyclone Sand*, 351 N.W.2d at

783. Further, the applicant has the burden of proof in showing that all the conditions of the ordinance are satisfied. *Johnson v. Bd. of Adjustment*, 239 N.W.2d 873, 885 (Iowa 1976).

Section 45.09(3) of the Dallas County Zoning Ordinance, as amended, controls the issuance of Hallett's conditional use permit. It provides in relevant part:

C. Conditions To Authorization. No conditional use shall be granted by Board of Adjustment until the Board of Adjustment first finds:

(a) Surrounding Area. The value and qualities of the area (or neighborhood) surrounding the conditional use are not substantially injured, and the establishment of a conditional use will not impede the normal and orderly development and improvement of surrounding undeveloped property for uses predominant in the area.

(b) Infrastructure. That adequate utilities, access road, drainage, and other necessary facilities have been or are being provided.

(c) Intent of Ordinance. That the conditional use is consistent with the intent and purpose of this Ordinance to promote public health, safety, and general welfare.

(d) Nuisance Factors. That adequate measures have been or will be taken to prevent or control offensive odor, fumes, dust, noise, and vibration, so that none of these will constitute a nuisance and to control lighted signs and other lights in such a manner that no disturbance to neighboring properties will result.

(e) Comprehensive Plan. That the conditional use is not inconsistent with the comprehensive plan and land use policies of the County.

McKinney concedes all the above factors were satisfied, with the exception of (e).

The sole issue is whether "the conditional use is not inconsistent with the comprehensive plan and land use policies" of Dallas County.

Dallas County adopted its Comprehensive Plan in 1998. It consists of a six-page document and two maps. It is "a statement of goals, objectives, and policies, that are to be used to guide land use decisions." *Comprehensive Plan for the Unincorporated Area of Dallas County*, p. 1 (Nov. 1998). Its Mission Statement provides:

Dallas County has significant natural resources. Agricultural land and the Raccoon River Greenbelt area should be protected from development. Development should be directed in and near incorporated areas and away from prime agricultural areas and greenbelt areas. The lands in Agricultural Zones should be exclusively intended for agriculture, conservation, recreation, floodplain and open space.

*Id.* at 3.

In addition to the Mission Statement, the Comprehensive Plan contains eleven goals and objectives. The goals and objectives relevant to this appeal are:

Goal 3: Protect prime agricultural land (CSR 71+) from development and utilize less productive land first.

Goal 4: Protect land that has significant natural, cultural, or historical resources.

. . . .

Goal 8: Guide non-agricultural uses to areas with lower quality (CSR 5–60) agricultural land, or into incorporated areas.

Goal 9: Encourage development and infill at Interstate 80 interchanges and within existing Industrial and Commercial lands.

. . . .

Goal 11: Encourage development within corporate city limits. If land is unavailable, county is likely to be receptive to new development within ½ mile of existing corporate city limits.

*Id.* at 3–4.

Lastly, the implementation section of the plan contains the following language:

Flexibility in implementing the Comprehensive Plan requires balancing the concepts of the plan with the realities of the growth and change.

*Id.* at 4.

McKinney argues there was no determination from the Board as to whether Hallett's permit was "not inconsistent with the comprehensive plan." McKinney also contends there was no showing that the conditional use permit would encourage development. For support, McKinney refers to Goals 9 and 11 of the Comprehensive Plan. We find these arguments unpersuasive.

The proceedings in the district court were tried de novo. Iowa Code § 335.21 (2001). The writ as returned by the Board to the district court contained a substantial portion of the record made before the Board. *See* Iowa Code § 335.20 (requiring the board of adjustment to provide the district court copies of the original papers it acted upon as may be pertinent and material to show the grounds of its decision). The Board specifically found, "[T]he petition [for the conditional use permit] meets all the requirements of chapter 45 of the Dallas County Code of Ordinances, and should now be finally approved." In addressing the claims made by McKinney and the other objectors, the district court concluded, "[T]he value and qualities of the surrounding area will not be substantially injured nor the orderly development and improvement of the surrounding undeveloped property impeded as to uses predominant in the area," and

"the conditional use permit granted is consistent with the comprehensive plan."

In determining whether the district court's opinion is supported by substantial evidence, we must consider the Comprehensive Plan in its entirety. Strict adherence to certain statements made in the plan could actually negate other goals and objectives of the comprehensive plan. *Ackman,* 596 N.W.2d at 103. The Comprehensive Plan recognizes competing interests exist between agriculture uses and development of the agriculture land for residential and commercial uses. *Comprehensive Plan for the Unincorporated Area of Dallas County,* p. 4. The Comprehensive Plan requires that its competing concepts be balanced against the realities of growth and change in the county. *Id.*

■ The record indicates the restrictions placed on the conditional use permit by the Board make the mining operation minimally intrusive to the surrounding area. As a factual matter, the sand and gravel mined from this operation will be used to construct the roads and buildings in the area. These factors should encourage development.

The record also indicates the mining operation is located on land designated as "Floodplain Soils" on the Comprehensive Plan's Soil Classification and Slope Analysis map. This use will protect prime agriculture land from development by using less productive land first.

Additionally, the record indicates one of the restrictions imposed by the Board required the mining operations to terminate ten years from the date of the issuance of the permit. At that time, Hallett will reclaim the property for use as a park or for other conservation purposes. This is consistent with using agricultural lands for conservation, recreation, floodplain, and open space. It will also make the area more aesthetically pleasing.

Substantial evidence exists in the record supporting the findings of the district court. The district court was correct when it determined the granting of the conditional use permit to Hallett by the Board "is not inconsistent with the comprehensive plan and land use policies of the County."

## V. Disposition.

In sum, we conclude the record amply supports the Board and the district court's findings. We find no basis for setting aside the Board's issuance of the conditional use permit to Hallett and affirm the judgment of the district court.

**AFFIRMED.**