# IN THE COURT OF APPEALS OF IOWA

No. 16-1655
Filed August 2, 2017


**SHOP N SAVE FOOD LLC d/b/a SHOP N SAVE,**
        Plaintiff-Appellant,

**vs.**

**CITY OF DES MOINES ZONING BOARD OF ADJUSTMENT,**
        Defendant-Appellee.
_____


Appeal from the Iowa District Court for Polk County, Robert B. Hanson, Judge.


A convenience store appeals the district court order affirming the denial of its application for a conditional use permit. **AFFIRMED.**


Alfredo Parrish of Parrish, Kruidenier, Dunn, Boles, Gribble, Gentry, Brown & Bergmann, L.L.P., Des Moines, for appellant.

Douglas P. Philiph, Assistant City Attorney, Des Moines, for appellee.


Considered by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**TABOR, Judge.**

The owner of a Des Moines convenience store applied for a conditional use permit (CUP) that would allow the business to sell wine and beer. After hearing from the owner's attorney, as well as neighbors in opposition, the city's zoning board of adjustment denied the application. The district court affirmed the board's denial, and the store owner now appeals. The owner contends the store is "legally entitled" to a CUP because (1) the record does not support the district court's reasons for affirming the board's decision and (2) the court failed to consider whether imposing reasonable conditions on the operation of the business would have ensured compliance with the city ordinance. Finding substantial evidence to justify the district court's decision, we affirm.

## I. Facts and Prior Proceedings

At issue is a Shop N Save store at 1829 Sixth Avenue, located in a "C-1" neighborhood retail commercial district.[1] Previous owners of the store had been permitted to sell liquor, beer, and wine, but the store's liquor license was suspended for the year leading up to the current application.[2] Due to changes in zoning regulations, the new owner was required to seek a CUP to engage in the

---

[1] Des Moines, Iowa, Municipal Code section 134-841 provides:
> The C-1 neighborhood retail commercial district is intended to provide for the convenience shopping of persons living in neighborhood residential areas and for general uses and activities of a retail and personal service character. Only those uses are permitted which are necessary to satisfy the local needs which occur so frequently as to require commercial facilities in proximity to residential areas. In addition, low-intensity business and professional offices are permitted.

[2] A community member indicated the license had been suspended following a "K-2 incident." "K-2" refers to synthetic marijuana. *See State v. Heinrichs*, 845 N.W.2d 450, 452 (Iowa Ct. App. 2013).

sale of alcohol.[3]  The owner filed the application in early March 2015, and the board set the matter for a public hearing on April 22.

At the outset of the hearing, a city staff member presented a written report, which recommended approval of the CUP subject to ten conditions.[4]  He provided the board with letters from local neighborhood associations, as well as police reports from the neighborhood.  The staff member opined the police reports were of limited value—the Shop N Save had been either closed or barred from selling alcohol for most or all of the time covered by the reports.[5]  The city considered only one of the incidents listed on the report to be related to the operation of the Shop N Save and noted the police reports did not directly corroborate the concerns of criminal activity touted by the individuals living in the neighborhood.

Next, counsel for Shop N Save presented argument.  He recognized "there had been problems in the past" with crime around this Shop N Save location but asserted the new owner was willing to work with the neighborhood

---

[3] Convenience stores in C-1 districts are prohibited from selling liquor and are required to obtain a CUP to sell beer or wine.  *See* Des Moines, Iowa, Municipal Code § 134-844(5)–(6).

[4] The conditions were as follows: (1) prohibiting the sale of liquor; (2) requiring no more than 40% of gross receipts from sale of alcohol and tobacco products; (3) obtaining required city permits; (4) providing a statement prepared by a certified public accountant identifying the total volume of sales, separately identifying volume of sales of alcohol and tobacco, to the Board by December 15, 2015; (5) posting contact information for a manager or owner conspicuously near the entrance of the Shop N Save; (6) instituting a no-loitering policy; (7) refraining from dispensing alcohol through a drive-through window; (8) removing trash from the premises daily; (9) illuminating and landscaping the property to minimize hiding places for criminal activity; and (10) allowing a zoning enforcement officer to apply for reconsideration if operation becomes a nuisance or violates the conditions.

[5] It is unclear in the record whether the business was closed in the year leading up to the March 2015 application for the CUP.  The city staff member indicated it was closed; a neighborhood resident stated it remained open but did not sell alcohol.

associations to address those problems.  Board members were skeptical about the legitimacy of the ownership transfer, and counsel acknowledged the transfer had not yet occurred.  Counsel told the board the store was being run by "a combination of both [old and new management] but it's generally the new management . . . running the store."  When pressed about the certainty of the transfer, counsel responded: "All I can say is I have the agreement" and "[h]e's already bought it."  But the attorney clarified the official transfer was not scheduled to occur until May of that year.

Six community members—some acting on behalf of neighborhood associations—spoke out against the issuance of the CUP, primarily citing concerns about crime.  A neighbor of the store explained:

> I have had people, you know, from fights and loitering, come into my yard asking for money.  I . . . pick up trash that comes off of their property on a daily basis.  I deal with the loud music.  I deal with . . . seeing prostitution.
>     . . . .  And the most frustrating aspect is that there does not appear to be . . . an intention to control what happens on the property.

Another nearby property owner asserted the crimes he had witnessed, such as drug dealing and prostitution, likely were not reflected in the police reports because the crimes happened too quickly and "[c]alling the police does no good."  Some of those who opposed the issuance of the CUP linked their concerns about crime to the sale of alcohol.  One community member told the board he believed the sale of beer and wine drew "the wrong people"—people who "buy the beer, linger around, drink it, get drunk, and start things."

Because of their past negative experiences, including a failed agreement between the outgoing Shop N Save management and the local neighborhood

associations, the community members predicted any conditions imposed by the board would be ineffective.  But in the event the board allowed the CUP, some individuals suggested additional conditions, including an earlier closing time and the presence of a security guard in the evening.  Counsel for Shop N Save resisted these conditions, reasoning they wouldn't "necessarily realistically address[] what the problems were" and "the first step would be to talk to the neighborhood and come up with a plan together."

In a four-to-one vote, the board denied the CUP.  Board members expressed concern about the ambiguity in the transfer of ownership and the "problematic" history of the location.  In a written decision issued after the hearing, the board reasoned "the proximity of the property, combined with the years of problems associated with the site, disqualified the subject property from the requested [CUP]."  The board concluded:

> [T]he premise[s] is not sufficiently separated from residential uses to adequately safeguard the health, safety, and general welfare of the persons residing in the adjoining or surrounding residential area.  This was evidenced by documented nuisances experienced when the property was previously operating as a business selling alcohol.  A limited food/retail sales establishment selling beer and wine at this location would not be consistent with the intended spirit and purpose of the Zoning Ordinance and would alter the essential character of the locality of the land in question.

Shop N Save filed a petition for writ of certiorari, alleging the board's denial of the CUP "was an illegal act and an error of law."  *See* Iowa Code § 414.15 (2015).  Armed with briefs from the parties, the district court heard oral argument in July 2016.  In a September 4, 2016 order the court affirmed the denial of Shop N Save's application, finding substantial evidence supported the board's decision.  Shop N Save appeals the district court's order.

## II.      Scope and Standard of Review

We review the district court's decision for correction of errors at law.  *See Bontrager Auto Serv., Inc. v. Iowa City Bd. of Adjustment*, 748 N.W.2d 483, 494–95 (Iowa 2008).  Our role on appeal is not to exercise the board's underlying discretion but, rather, to resolve the legal claims as raised in the petition for writ of certiorari.  *See Doss v. Zoning Bd. of Adjustment*, No. 16-0916, 2017 WL 702373, at *2 (Iowa Ct. App. Feb. 22, 2017).

The decision by a board of adjustment "enjoys a strong presumption of validity.  If the reasonableness of the board's action is 'open to a fair difference of opinion, the court may not substitute its decision for that of the board.'"  *Ackman v. Bd. of Adjustment*, 596 N.W.2d 96, 106 (Iowa 1999) (citation omitted).  We are bound by the district court's factual findings if they are supported by substantial evidence in the record.  *Id.* at 100–01; *see also U.S. Cellular Corp. v. Bd. of Adjustment*, 589 N.W.2d 712, 718 (Iowa 1999) (applying same review in context of challenge to city zoning board of adjustment decision).  Evidence is substantial if "a reasonable person would find it adequate to reach the given conclusion, even if a reviewing court might draw a contrary inference."  *Bush v. Bd. of Trs.*, 522 N.W.2d 864, 866 (Iowa Ct. App. 1994).

## III.      Analysis

A conditional or special use permit is meant to provide "flexibility in what otherwise would be the rigidity of zoning ordinances, while at the same time controlling troublesome aspects of somewhat incompatible uses by requiring certain restrictions and standards."  *W & G McKinney Farms, L.P. v. Dallas Cty. Bd. of Adjustment*, 674 N.W.2d 99, 103 (Iowa 2004).  The applicant—here Shop

N Save—bears "the burden of proof in showing that all the conditions of the ordinance are satisfied." *Id.* at 104.

On appeal, Shop N Save argues it was legally entitled to a CUP and challenges the sufficiency of the evidence supporting the district court's fact findings. *See Bowman v. City of Des Moines Mun. Hous. Agency*, 805 N.W.2d 790, 796 (Iowa 2011) (noting a board of adjustment "commits an illegality if the decision violates a statute, is not supported by substantial evidence, or is unreasonable, arbitrary, or capricious").

Under the city ordinance, the board shall grant a CUP

only where the business, when operated in conformance with such reasonable conditions as may be imposed by the board, satisfies the following criteria:
    1. The business conforms with the conditions identified in subsection (a) . . . .
    2. The proposed location, design, construction and operation of the particular use adequately safeguards the health, safety, and general welfare of persons residing in the adjoining or surrounding residential area.
    3. The business is sufficiently separated from the adjoining residential area by distance, landscaping, walls, or structures to prevent any noise, vibration, or light generated by the business from having a significant detrimental impact upon the adjoining residential uses.
    4. The business will not unduly increase congestion on the streets in the adjoining residential area.
    5. The operation of the business will not constitute a nuisance.[6]

Des Moines, Iowa, Municipal Code § 134-954(b). The board concedes Shop N Save met the first, fourth, and fifth requirements. Accordingly, we limit our

---

[6] Sales of beer and wine must be limited to 40% of the store's total sales. Des Moines, Iowa, Municipal Code § 134-954(a). The parties do not dispute that Shop N Save meets the 40% requirement. In addition, the business must "be separated by at least 150 feet from any church, school, public park, or licensed child care facility," but the parties agree this separation requirement is not at issue because Shop N Save had continuously held a liquor license since July 1, 2012. *See id.* § 134-954(a), (g).

analysis to requirements two and three, additionally considering the conditions proposed to the board.

### A. Does the proposed operation of the particular use adequately protect the health, safety, and general welfare of the neighborhood?

Section 134-954(b)(2) requires the applicant to prove: "The proposed location, design, construction and *operation of the particular use* adequately safeguards the health, safety, and general welfare of persons residing in the adjoining or surrounding residential area." (Emphasis added.) The particular use at issue is the selling of beer and wine from the Sixth Avenue store. Shop N Save contends the "health safety and general welfare" requirement "may not even apply to the sale of beer and wine" because the sale of such products is separate from the "physical characteristics" of the property from which they are sold.[7] We disagree with this contention. The language of the ordinance is broad enough to regulate not only the location, design, and construction of the business but its operation as well.

The board concluded Shop N Save did not establish that the proposed "operation" of "selling beer and wine at this location would be consistent with the intended spirit and purpose of the Zoning Ordinance" or the "essential character" of the neighborhood. Even if our court formed a different opinion about the impact of the beer and wine sales on the neighborhood, our view may not

---

[7] In support of its position, Shop N Save relies on this court's unpublished decision in *City of Clear Lake v. Kramer*, No. 09-1689, 2010 WL 3157759, at *1–2 (Iowa Ct. App. Aug. 11, 2010). *Kramer* rejected a city's assertion it could impose restrictions on a livestock producer's nonconforming use of his residential-zoned land under the city's police power to protect the public health, safety, and welfare. *Kramer*'s rejection of the city's general-police-power argument for regulating a nonconforming use is readily distinguishable from the question before us concerning the board's interpretation of the specific language of the CUP ordinance.

displace the board's judgment, so long as its judgment is support by substantial evidence. *W & G McKinney Farms*, 674 N.W.2d at 103 (explaining court will uphold grant of CUP even where "reasonableness of the board's action is 'open to a fair difference of opinion'"). After reviewing the record before the board, we find solid information to sustain its rejection of Shop N Save's application.

A municipality may deny a conditional or special use permit for reasons relating to public health, safety, and welfare, but generalized or unsupported neighborhood opposition does not, by itself, provide a legally sufficient reason for a CUP denial. *See Bartheld v. Cty. of Koochiching*, 716 N.W.2d 406, 413 (Minn. Ct. App. 2006); *see also Chanhassen Estates Residents Ass'n v. City of Chanhassen*, 342 N.W.2d 335, 340 (Minn. 1984). In this case, the Des Moines Board of Adjustment heard more than vague concerns from neighbors, the board received concrete information connecting the previous sale of beer and wine to people behaving badly in the neighborhood. For example, one neighbor submitted a comment card recalling that alcohol sales at the store had led to customers engaging in public intoxication, "loitering in large groups," and fights. That resident was not alone, according to the president of the River Bend Neighborhood Association:

> The property is surrounded on all sides by homes and apartments which are all negatively impacted by [Shop N Save's] poor business practices. . . . Neighborhood residents have witnessed what they believe to be drug exchanges, prostitution, public urination, defecation, and indecency, vagrancy, and lack of compliance with the noise ordinance on frequent occasions at the property.

In addition, a representative of the Prospect Park Neighborhood Association communicated to the board that the end of alcohol sales at a similarly situated

convenience store had a dramatic impact on the community: "[N]o more gunshots at night[;] less litter[;] more people going in to actually buy a few groceries, snacks, pop, and such, because they are not afraid to go there"; "slower traffic"; and "no obvious drug trafficking in the parking lot." Based on that neighborhood's experience, the representative predicted keeping alcohol out of the Shop N Save would have positive effects. Given these anecdotes and other substantiated reports from community members critiquing the effect of the store's alcohol sales on the safety and welfare of the Sixth Avenue neighborhood, we find substantial evidence in the record to support the board's decision to deny the CUP. *See Bontrager*, 748 N.W.2d at 496 (noting a board of adjustment may draw upon anecdotal reports in its decision as well as "commonsense inferences drawn from evidence relating to other issues, such as use and enjoyment, crime, safety, welfare, and aesthetics, to make a judgment as to whether the proposed use would substantially diminish or impair property values").

### B. Will noise generated by the business have a significant detrimental impact upon the adjoining residential uses?

Section 134-954(b)(3) requires the applicant to prove its business is "sufficiently separated from the adjoining residential area by distance, landscaping, walls, or structures" to prevent any noise "generated by the business from having a significant detrimental impact upon the adjoining residential uses." Noise complaints associated with past alcohol sales were among the concerns communicated to the board. As with the "health safety and general welfare" requirement, we find ample evidence in the record to gird the board's decision that Shop N Save did not meet its burden to show it could

satisfy the requirement that noise generated by the business would be sufficiently insulated to protect adjoining residences.

**C. Did the district court err in failing to find the prospect of new management required the board to impose reasonable conditions rather than denying the CUP?**

Alternatively, Shop N Save argues the change in ownership and exclusion of hard liquor sales would eliminate or, at least, reduce the problems anticipated by the neighbors stemming from the sale of beer and wine. Shop N Save's neighbors complained of serious crime, as well as minor disturbances, on and around the convenience store's property—which they attributed to alcohol sales. Shop N Save maintains we should reverse because those problems occurred while the property was under different management and while the store was selling liquor in addition to selling beer and wine.

Shop N Save also urges the board acted too rashly in turning down its CUP request when imposing reasonable conditions could have quelled the neighborhood concerns. Specifically, the business asserts the identified problem of individuals making noise on the property could have been addressed through conditions on the CUP, such as no-loitering policies, signage, and enforcement.

Section 134-954(b) of the Des Moines municipal code contemplates the board of adjustment "may" impose "reasonable conditions" on the operation of the business before granting a CUP, but it does not mandate the board impose conditions when it is appropriate to outright deny a CUP. *See Zimmerman v. Bd. of Cty. Commr's*, 264 P.3d 989, 1003 (Kan. 2011) (holding issuance of CUP under "reasonable conditions" was not "automatic"). The board did not deny Shop N Save's request without entertaining the possibility of reasonable

conditions that would bring the proposed use into compliance with the ordinance. *Contra Trisko v. City of Waite Park*, 566 N.W.2d 349, 357 (Minn. Ct. App. 1997) ("Evidence that a municipality denied a conditional use permit without suggesting or imposing conditions that would bring the proposed use into compliance may support a conclusion that the denial was arbitrary."). Both the city's staff and the neighbors suggested conditions to temper the side-effects of alcohol sales if the board decided to grant the CUP. But the board was entitled to find the suggested conditions would not adequately protect the residential nature of the neighborhood at issue.

At the time of the board-of-adjustment hearing, the transfer to new management had not yet occurred, and the pending owners expressed, at most, tepid responsiveness to the neighbors' serious reservations about the retail sale of beer and wine at this location. These circumstances signaled to the board that past problems at the location would likely continue into the future, regardless of any conditions the board could impose on Shop N Save's operation. The board's decision was based on substantial evidence. Accordingly, we agree with the district court's decision affirming the board's denial of the CUP.

**AFFIRMED.**