# IN THE COURT OF APPEALS OF IOWA

No. 23-0705
Filed June 5, 2024

MARTIN ROBINSON, THOMAS ROBINSON, LAURA ROBINSON, and PAULA
ROBINSON,
    Plaintiffs-Appellants,

vs.

LINN COUNTY BOARD OF SUPERVISORS,
    Defendant-Appellee,

and

COGGON SOLAR, LLC,
    Intervenor-Appellee.
_____

    Appeal from the Iowa District Court for Linn County, David M. Cox, Judge.


    Appellants challenge a district court decision annulling a writ of certiorari.

**AFFIRMED.**


    Gregg Geerdes, Iowa City, for appellants.

    Elena Wolford, Assistant Linn County Attorney, for appellee Linn County

Board of Supervisors.

    Brian J. Fagan, Paul D. Gamez, and Nicholas Petersen of Simmons Perrine

Moyer Bergman PLC, Cedar Rapids, for intervenor Coggon Solar, LLC.


    Heard by Tabor, P.J., and Greer and Schumacher, JJ.

**SCHUMACHER, Judge.**

Martin, Thomas, Laura, and Paula Robinson (the Robinsons) appeal the decision of the district court. The Robinsons filed a certiorari action in the district court to challenge the Linn County Board of Supervisors' (the Board) decision to rezone agricultural land near their property. The court found for the board and annulled the writ. The Robinsons appeal, raising eight issues. They argue (1) the district court applied an incorrect standard of review; (2) the rezoning is inconsistent with the county comprehensive plan; (3) the overlay district established by the rezoning violates the uniformity requirement of Iowa Code section 335.4 (2022); (4) the Board decision was an illegal zoning of agricultural property under section 335.2; (5) the Board decision violates Linn County Ordinance section 107-68(3)(g) because the requirements for rezoning were not satisfied; (6) Linn County Ordinance section 107-70(1)(i) illegally altered the county comprehensive plan; (7) the rezoning is a taking of their property; and (8) the rezoning was illegal because its material terms were not read at three consecutive meetings.

## I. Background Facts and Proceedings

In 2021, the owners of 750 acres of farmland in Linn County agreed to lease their property for use as a large solar farm development by Coggan Solar, LLC. Coggon Solar applied to Linn County for the development of a 100-megawatt solar farm on that property. Coggon Solar's application followed the early closure of the Duane Arnold Energy Center in Linn County as the result of damages from the derecho in 2020. The 750 acres leased by Coggan Solar was advantageous for the project because of its proximity to an existing power substation and electrical

transmission lines. The construction of this solar farm required the Board to rezone the 750 acres from an agricultural district (AG) to an agricultural district with a renewable energy overlay district (RE-AG).

Linn County's zoning ordinance provides for several zoning classifications, including several "overlay" districts that can be placed on top of another zoning district. One such overlay district is the renewable energy overlay district used in this case. Zoning must also be in accordance with the Linn County Comprehensive Plan (Comprehensive Plan), which lays out goals for the county. The goals include both renewable energy and agricultural objectives.

The Robinsons' concerns with the solar farm project and the rezoning stem from their ownership of farmland adjacent to and uphill from the 750 acres. Water from the Robinsons' property drains across parts of the 750 acres. The drainage occurs through an underground tile line. The Robinsons assert that the installation of the solar panels, which involves driving steel piers into the ground, may damage their tile line. Despite the Robinsons' opposition, on January 24, 2022, the Board approved the rezoning to allow for the solar farm project. This approval followed three public hearings on the project and included public comment and discussion on a "set back zone" to be required as a buffer between the solar farm and other properties. Coggan Solar signed an acknowledgment accepting the conditions of the project included in Linn County Ordinance section 6-1-2022, which also granted the rezoning.

The Robinsons filed a writ of certiorari to challenge the Board's decision to rezone the 750 acres, and Coggan Solar intervened. A party may bring a certiorari action "when the party claims an inferior tribunal, board, or officer, exercising

judicial functions, or a judicial magistrate exceeded proper jurisdiction or otherwise acted illegally." Iowa R. Civ. P. 1.1401. The district court dismissed their claims, and the Robinsons filed an Iowa Rule of Civil Procedure 1.904 motion to reconsider, which the court denied. The Robinsons appeal.

## II. Standard of Review

Our review of the district court decision is governed by Iowa Rule of Civil Procedure 1.1412 that states: "An appeal from an order or judgment of the district court in a certiorari proceeding is governed by the rules of appellate procedure applicable to appeals in ordinary civil actions." Consequently, "[w]e review [the] district court's ruling on [the] petition for writ of certiorari for the correction of errors at law." *Baltimore v. Dallas Cnty.*, No. 23-0142, 2024 WL 469637, at *2 (Iowa Ct. App. Feb. 7, 2024); *see also Sergeant Bluff-Luton Sch. Dist. v. City Council of City of Sioux City*, 605 N.W.2d 294, 297 (Iowa 2000). "We are bound by the district court's findings if supported by substantial evidence. However, we are not bound by erroneous legal rulings that materially affect the court's decision." *Baker v. Bd. of Adjustment, City of Johnston*, 671 N.W.2d 405, 414 (Iowa 2003) (internal citation omitted).

## III. Discussion

The Robinsons allege eight wrongs committed by the Board and the district court. We address each of their arguments in turn.

a. Standard of Review Applied by the District Court

The Robinsons argue the district court applied an incorrect standard of review concerning their petition for writ of certiorari filed in the district court for Linn

County. Typically, in a zoning case, the district court applies a "fairly debatable" standard of review to the board's actions:

> [I]n a certiorari proceeding in a zoning case the district court finds the facts anew on the record made in the certiorari proceeding. That record will include the return to the writ and any additional evidence which may have been offered by the parties. However, the district court is not free to decide the case anew. Illegality of the challenged board action is established by reason of the court's findings of fact if they do not provide substantial support for the board decision. If the district court's findings of fact leave the reasonableness of the board's action open to a fair difference of opinion, the court may not substitute its decision for that of the board.

*Lauridsen v. City of Okoboji Bd. of Adjustment*, 554 N.W.2d 541, 543 (Iowa 1996) (alteration in original) (citation omitted).

In a certiorari action to review a county board's zoning decision the proper standard of review depends on the specific actions of the board. When the actions involved are legislative in nature or decisions of policy, "the proper standard of review . . . is 'the generally limited scope of review' we utilize in order 'to determine whether the decision by the Board to rezone is fairly debatable.'" *Residential & Agric. Advisory Comm., LLC v. Dyersville City Council*, 888 N.W.2d 24, 43 (Iowa 2016) (quoting *Montgomery v. Bremer Cnty. Bd. of Sup'rs*, 299 N.W.2d 687, 692 (Iowa 1980)). Zoning regulations are presumed valid, and "if the reasonableness of a zoning ordinance is 'fairly debatable,' then we decline to substitute our judgment for that of the city council or board of supervisors." *Id.*

Typically, zoning decisions are a legislative function. *Id.* at 40. However, "there are some situations in which a zoning decision can take on a quasi-judicial nature that may necessitate a different standard of review." *Id.* at 40–41. The

Robinsons argue this is such a case and that the district court should have reviewed the board's action as a matter of law. We disagree.

In considering whether the action of a board constituted a quasi-judicial function, our supreme court has considered factors including whether "(1) the questioned act involves a proceeding in which notice and opportunity to be heard are required; or (2) a determination of rights of parties is made which requires the exercise of discretion in finding facts and applying the law thereto." *Id.* at 41 (citation omitted). In considering those factors, in a case in which a decision was made "to determine whether rezoning was in the best interest of the city as a whole," rather than to weigh the legal rights of one party against another, the court has determined the zoning actions in question were legislative, not quasi-judicial. *Id.* at 43.

The zoning actions by the board here were legislative in nature. *See id.* The Board elected to rezone the 750 acres based on what was in the best interest of the community, considering the need for additional sources of power. They did not decide on any individual party's substantive rights, nor did they interpret and apply laws. *See id.*; *Ames 2304, LLC v. City of Ames, Zoning Bd. of Adjustment*, 924 N.W.2d 863, 871–72 (Iowa 2019) (considering a board's interpretation and application of the word "intensity" in the city zoning code). The district court applied the correct standard of review.

b. Consistency with the Linn County Comprehensive Plan

The Robinsons argue the rezoning was inconsistent with the Comprehensive Plan and therefore illegal.

Iowa Code section 335.5 states that "[t]he regulations shall be made in accordance with a comprehensive plan." Linn County Ordinance section 107-69(5) also requires "the proposed development is consistent with the goals, objectives, and strategies of the comprehensive plan." Zoning decisions should consider the county's comprehensive plan and "promote the goals of that individualized plan." *Webb v. Giltner*, 468 N.W.2d 838, 841 (Iowa Ct. App. 1991). "The comprehensive plan requirement is intended to ensure the county board acts rationally rather than arbitrarily in exercising their delegated zoning authority." *Wolf v. City of Ely*, 493 N.W.2d 846, 849 (Iowa 1992). However, "[t]he party challenging a zoning decision on the basis that it was not made in accordance with the city's comprehensive plan carries a heavy burden that requires the party to counter the 'strong presumption of validity accorded zoning decisions.'" *Residential & Agric. Advisory Comm.*, 888 N.W.2d at 44 (quoting 37 Am. Jur. Proof of Facts 3d 383 (1996)).

The Comprehensive Plan includes seven elements, which have underlying goals, objectives, and strategies for the Board to consider when zoning. The Robinsons focus on the fifth element, "resource protection," which includes a goal to "encourage the long-term viability of agriculture." Under this goal are objectives to "[p]rotect the land best suited to a variety of agricultural practices," "[m]aintain agriculture as an integral part of the county's economy, landscape, and natural resource base," "[d]iscourage non-agricultural uses in the agricultural areas of the

county," and "[m]inimize conflicts and incompatibilities between agriculture and other land use." The Robinsons cite these objectives as a "requirement" that farmland be preserved.

But the Robinsons' assertion that the Comprehensive Plan imposes a "non-discretionary" duty to preserve farmland is not supported by a holistic review of the plan. "[W]e must consider the Comprehensive Plan in its entirety." *W & G McKinney Farms, L.P. v. Dallas Cnty. Bd. of Adjustment*, 674 N.W.2d 99, 105 (Iowa 2004). And "[s]trict adherence to certain statements made in the plan could actually negate other goals and objectives of the comprehensive plan." *Id.*

To begin, the resolution adopting the written Comprehensive Plan states that "Linn County shall consider and may apply the goals, objectives, and strategies of the plan during deliberation of all appropriate . . . zoning . . . decisions." The choice of "may apply" does not suggest a requirement. Further, the Comprehensive Plan's first element is "alternative and renewable energy." And one of the goals of that element is "increase the use of alternative and renewable energy resources in the county." Nothing in the plan suggests that the agricultural goals of the fifth element should take precedence over the renewable energy goals of the first element, or that the renewable energy goals have precedence over agricultural goals.

"In the context of rezoning, we have held that 'compliance with the comprehensive plan requirement merely means that zoning authorities have given "full consideration to the problem presented, including the needs of the public, changing conditions, and the similarity of other land in the same area."'" *Residential & Agric. Advisory Comm.*, 888 N.W.2d at 45 (quoting *Iowa Coal Min.*

*Co. v. Monroe County*, 494 N.W.2d 664, 669 (Iowa 1993)).  The record shows that the Board spent considerable time balancing the options and considering data from many sources, including extensive public comment, land value reports, and studies on the project's environmental impact.  The district court properly determined that the decision by the Board was a decision weighing policy, the reasonableness of which was debatable.   *See id.* at 43, 45.  It is not the district court's place to substitute its judgment for the judgment of the Board on this matter, and the Robinsons have not met the high standard to show the rezoning was inconsistent with the Comprehensive Plan.  *See id.* at 44.  We affirm the district court on this issue.

c.  Iowa Code Section 335.4 Uniformity Requirement

The Robinsons also point to Iowa Code section 335.4 to argue the rezoning is illegal.  That section states "[t]he board of supervisors may divide the county . . . into districts . . . .  All such regulations and restrictions shall be uniform for each class or kind of buildings throughout each district, but the regulations in one district may differ from those in other districts."  Iowa Code § 335.4.

The Robinsons argue the agricultural district with a renewable energy overlay violates the "uniformity requirement" of section 335.4.  They claim that this rezoning allows for the 750 acres to be used for solar energy, while other agricultural districts cannot be used for the renewable energy overlay.  The Robinsons contend this is a distinct issue from spot zoning,[1] and they point to

---

[1]The Robinsons presented an additional and separate "illegal spot-zoning" argument before the district court which they do not present on appeal.  The district court found no spot-zoning occurred.  And because they have abandoned this

*Keppy v. Ehlers*, where a county reclassified just twenty acres of a larger 170-acre area. 115 N.W.2d 198, 199–200 (Iowa 1962). The court in that case ultimately found the actions of the county to "result[] in illegal 'spot zoning.'" *Id.* at 200. The district court here concluded neither *Keppy* nor any other Iowa case directly addresses the "uniformity" issue the Robinsons assert. We agree. Assuming section 335.4 imposes a "uniformity" requirement separate from the prohibition on spot-zoning, the language of section 335.4 shows it does not apply in this case.

The relevant language at issue is: "All such regulations and restrictions shall be uniform for each class or kind of buildings throughout each district, but the regulations in one district may differ from those in other districts." Iowa Code § 335.4. In a statute "precise and unambiguous language should be given its plain and rational meaning." *Coralville Hotel Assocs., L.C. v. City of Coralville*, 684 N.W.2d 245, 248 (Iowa 2004). Based on the plain language in section 335.4, the uniformity requirement does not apply between different kinds of districts. *See* Iowa Code § 335.4.

In this case, different "regulations and restrictions" do not apply within the same kind of district. Rather, the district classification of the 750 acres was changed from "agricultural" to "agricultural with a renewable energy overlay." Linn County Ordinance section 6-1-2022, which granted the rezoning, stated: "An ordinance amending the official zoning map of Linn County, Iowa by rezoning and *changing the district classification* of certain property," and "Section 1. Zoning

---

argument on appeal, we do not address it now. *See MidWestOne Bank v. Heartland Co-op*, 941 N.W.2d 876, 885 (Iowa 2020) (declining to address an issue abandoned on appeal).

District Changed. The zoning of property located near Coggan, Iowa containing approximately 750 acres . . . is hereby changed from the 'AG' Agricultural District to the 'RE-AG' Agricultural District with a Renewable Energy overlay District." (Emphasis added.) Additionally, Linn County Ordinance section 107-149 establishes Renewable Energy Overlay Districts separately from Agricultural Districts, which are established in section 107-132. In the context of spot zoning, we have determined that an "overlay district" is permissible. *See Ely v. City Council of City Of Ames*, No. 09-1424, 2010 WL 2598244, at *5–6 (Iowa Ct. App. 2010) ("The city's rezoning of the . . . property did not constitute illegal spot zoning.").

The rezoning of the 750 acres from "AG" to "RE-AG" did not violate the uniformity requirement of section 335.4 because the rezoning changed the district classification. *See* Iowa Code § 335.4. Zoning of Agricultural Property under Iowa Code section 335.2.

The Robinsons also argue the rezoning of the 750 acres was illegal[2] because of the agricultural safe harbor under Iowa Code section 335.2.

Iowa Code Section 335.2 states in relevant part:

[N]o ordinance adopted under this chapter applies to land, farm houses, farm barns, farm outbuildings, or other buildings or

---

[2] The Robinsons use the word "illegal" to describe ordinances changing the zoning of agricultural lands, however, section 335.2 merely states such ordinances are not applicable. Iowa Code § 335.2.

> structures that are primarily adapted, by reason of nature and area, for use for agricultural purposes, while so used. . . .
>
> . . . .
>
> 3. Land, farm houses, farm barns, farm outbuildings, or other buildings or structures may qualify under this section independently or in combination with other agricultural uses.

Although section 335.2 is normally a shield used by landowners to protect their agricultural land from newly implemented zoning regulations, the Robinsons seek to use it as a sword to prevent the rezoning of the neighboring 750 acres. To make this argument, they rely on the fact their drain tile runs under parts of the 750 acres, arguing that makes it used for agriculture. They point to section 335.2(3), which states property "may qualify under this section . . . in combination with other agricultural uses." To the Robinsons, because their farmland drains through the tile on the 750 acres, the 750 acres is being used for agriculture.

Although no Iowa case addresses this exact fact pattern, courts in Iowa have repeatedly addressed whether certain properties were used for agriculture in the context of section 335.2. Our supreme court has stated, "In determining what are agricultural purposes within the scope of this exemption, we have concluded that agriculture is the art or science of cultivating the ground, including harvesting of crops and rearing and management of livestock." *Thompson v. Hancock Cnty.*, 539 N.W.2d 181, 183 (Iowa 1995). There is no question then that a "solar farm" is not agriculture. *See id.* The Robinsons' claim is reliant on the relationship between their farm property and the 750 acres created by their drainage tile.

Such multi-use properties have been discussed in the context of section 335.2 before. In *Kramer v. Board of Adjustment for Sioux County*, this court found an industrial wastewater lagoon was not primarily adapted for

agriculture, even though the waste in the lagoon was later used for fertilizer because its *primary* purpose was to store industrial wastewater, not to serve as fertilizer. 795 N.W.2d 86, 92 (Iowa Ct. App. 2010) ("Although the wastewater is eventually used to fertilize the land farmed by Dr. Kramer, the fact remains that the primary purpose and functional aspect of the lagoon is to store Sioux Pharm's industrial wastewater."). In another case, *Lang v. Linn County Board of Adjustment*, our supreme court concluded a county board's determination that a rental farmhouse inhabited by a tenant who hardly farmed was not "primarily adapted" for agriculture was reasonable. 829 N.W.2d 1, 10–11 (Iowa 2013).

The Robinsons assert subparagraph (3) of section 335.2 "was apparently added as a legislative attempt to modify the holding in *Lang v. Linn County Board of Adjustment*." They cite no authority to support this claim. The court in *Lang* considered that "[w]hen landowners build an additional house on their land, rent it out, and then want to claim it as another exempt farmhouse, it is appropriate for the county to ask how much time the tenants of the house spend on farming activities." *Id.* at 11. We believe the holding in *Lang* remains instructive here, especially considering that the drainage tile will represent only a portion of the way the 750 acres is used. *See id.* at 10–11. Based on Tom Robinson's own testimony, the tile line runs only through a small northeastern corner of the 750 acres.

We cannot conclude the 750 acres will be used for agriculture. The primary purpose of the 750 acres will be the generation of solar power, and it is therefore not primarily for agriculture, even if it also happens to house drainage tile. *See Kramer*, 795 N.W.2d at 92. That a small portion of the property contains the

Robinsons' drainage tile does not mean the entire property is being used for agriculture. *See Lang*, 829 N.W.2d at 11 ("[T]he 'primarily adapted' test allows county zoning authorities to consider the overall importance and underlying purpose of the agricultural activities in question."). We affirm the district court on this issue.

d. Conditions of Rezoning Under Linn County Ordinance section 107-68(3)(g)

The Robinsons believe the required conditions necessary for rezoning under Linn County Ordinance section 107-68(3)(g) were not met before final approval by the Board, and consequently, the rezoning cannot stand.

Linn County Ordinance section 107-68(3)(g) reads: "A rezoning and map amendment request requires consideration by the board of supervisors at three public meetings . . . however, final consideration and approval shall not occur until all conditions of approval have been met." The rezoning under Linn County Ordinance section 6-1-2022 was subject to several attached conditions Coggon Solar was required to fulfill. The Robinsons assert several of these conditions of approval were not met, and therefore the Board could not grant final approval.

The Robinsons specifically point to two conditions. First: "Prior to the close of the Board of Supervisors' public hearing, the owner must sign an 'Acceptance of Conditions' form." Although Coggon Solar signed this form at the close of the final hearing, on January 24, the Robinsons assert the condition required a signature after the first hearing on January 10. We believe the plain language of the condition only requires Coggon Solar's signature after the *final* hearing, *see Coralville Hotel Assocs.*, 684 N.W.2d at 248, but even if the Robinsons' reading is a possible understanding of the condition, we do not adopt it. "In interpreting a

statute, we look for an interpretation that is reasonable and avoids absurd results." *Colwell v. Iowa Dep't of Hum. Servs.*, 923 N.W.2d 225, 233 (Iowa 2019). It would be nonsensical to read this language to require Coggon Solar to have agreed to the conditions before the final hearing. If that was the case, Coggon Solar would be agreeing to conditions which remained in flux and could still be altered. This would not be a reasonable interpretation of the condition. *See id.*

The second condition the Robinsons rely on requires Coggon Solar to post a performance bond, which would fund the decommissioning of the solar project. As observed by the district court, it would make little sense to require a decommissioning bond be posted before any construction on the site has even begun. In fact, the condition itself states, "[a] performance bond *will* be required to cover decommissioning costs." (Emphasis added.) We give words their common ordinary meaning, *Jorgensen v. Smith*, No. 22-0576, 2024 WL 501430, at *3 (Iowa Feb. 9, 2024), and it is meaningful that the future tense "will" is used in this condition. Further, many conditions cannot be fulfilled before construction. One condition states, "avoid the small fence north of the project limits," another, "construction shall be limited to the hours of 7AM–5PM." Once again, these conditions cannot be fulfilled before construction begins. Our interpretation should avoid absurd results, *Colwell*, 923 N.W.2d at 233, and it would be absurd to find Coggon Solar is required to perform actions before it is possible to perform them. The Board and Coggon Solar met the requirements under Linn County Ordinance section 107-68 when Coggon Solar agreed to the conditions on January 24. We affirm the district court on this issue.

e. Linn County Ordinance § 107-70(1)(i) and the Requirements of the Comprehensive Plan

The Robinsons argue Linn County Ordinance section 107-70(1)(i) illegally changed the requirements of the Linn County Comprehensive Plan, and because the rezoning relied on section 107-70(1)(i), it must also be invalid.

The Comprehensive Plan discusses the use of a Land Value Evaluation Site Assessment (LESA), to evaluate whether and how a property should be developed. The Robinsons allege this is a requirement under the Comprehensive Plan. Section 107-70 makes a LESA mandatory before a property can be rezoned, but it also exempts Renewable Energy Overlay Districts from LESA analysis. The Robinsons argue that the Comprehensive Plan requires LESA analysis, and therefore section 107-70 cannot exempt any rezoning from it. Typically, major changes in a county comprehensive plan can be made only by an amendment to the comprehensive plan. *Baltimore*, 2024 WL 469637, at *2.

Looking to the Comprehensive Plan, the use of LESA is mentioned as a strategy, stating: "Utilize the . . . (LESA) system to retain high-value and high-quality agricultural land, and to direct development away from areas best suited from agriculture." However, as we discussed before, the resolution adopting the Comprehensive Plan requires only that Linn County "shall consider and *may* apply the goals, objectives, and *strategies* of the plan during deliberation of all appropriate . . . zoning . . . decisions." (Emphasis added.) Once again, we give words their common ordinary meaning, *Jorgensen*, 2024 WL 501430, at *3, and the use of "may apply" to describe the strategies in the Comprehensive Plan shows they are not mandatory.

Linn County Ordinance section 107-70 states, "A LESA analysis shall be required for all development proposals where a rezoning or subdivision of land is proposed. Exceptions to this shall include: . . . Rezoning to the renewable energy overlay district." Section 107-70 makes the Comprehensive Plan's optional LESA analysis mandatory, except in cases where land is being rezoned to the renewable energy overlay district. Section 107-70 does not impermissibly alter the comprehensive plan because rezoning to the renewable energy overlay district never required a LESA analysis under the Comprehensive Plan. We affirm the district court on this issue.

   f. The Rezoning as a Taking

The Robinsons maintain the rezoning "illegally infringes upon [their] property rights and constitutes a taking of their property." To make this argument, they point to the fact that the installation of solar panels will require supporting pilings to be driven into the ground to support the solar panels. They argue this installation may damage their tile line and the Board's actions authorized Coggon Solar to relocate the tile line if necessary.

The Fifth Amendment of the United States Constitution states that people may not be "deprived of property, without due process of law; nor shall private property be taken for public use without just compensation," and article I, section 18 of the Iowa Constitution states that "[p]rivate property shall not be taken for public use without just compensation first being made." To the extent that constitutional issues are raised, we review them de novo. *Blumenthal Inv. Trusts v. City of W. Des Moines*, 636 N.W.2d 255, 260 (Iowa 2001).

"A taking occurs when there is even a minimal, permanent physical occupation of real property." *Molo Oil Co. v. The City of Dubuque*, 692 N.W.2d 686, 692 (Iowa 2005). "Absence of such continuance or permanency leaves the property owner with nothing but an action in tort." *Kingsway Cathedral v. Iowa Dep't of Transp.*, 711 N.W.2d 6, 11 (Iowa 2006). To determine whether there has been a taking, we consider the following: "(1) Is there a constitutionally protected private property interest at stake? (2) Has this private property interest been 'taken' by the government for public use? and (3) If the protected property interest has been taken, has just compensation been paid to the owner?" *Id.* at 9 (quoting *Bormann v. Bd. of Supervisors*, 584 N.W.2d 309, 315 (Iowa 1998)).

The Robinsons allege a property interest accompanying their tile line that runs across a portion of the 750 acres.

> The general principle of law is "that the owner of the upper or dominant estate has a legal and natural easement in the lower or servient estate for the drainage of surface waters, that the natural flow or passage of the waters cannot be interrupted or prevented by the servient owner to the detriment or injury of the dominant proprietor."

*Ditch v. Hess*, 212 N.W.2d 442, 448 (Iowa 1973) (citation omitted). Water flows from the Robinsons' property through the 750 acres via the tile line. The Robinsons have a property interest in the tile line, *see id.*, and they have not received compensation as part of this process. Consequently, we must determine whether "this private property interest been 'taken' by the government for public use." *Kingsway Cathedral*, 711 N.W.2d at 9 (citation omitted).

The solar farm project plan approved by the Board involves the installation of solar panels, which will be supported by long piers driven into the ground.

However, Linn County Ordinance section 6-1-2022, which approved the rezoning, included a condition requiring Coggon Solar: "[s]ubmit either as a standalone document or component of an agricultural mitigation plan, a subsurface drain tile mitigation and management plan which provides uniform minimum thresholds for maintaining established subsurface drainage systems as currently being utilized on lands subject to development." Coggan Solar submitted this mitigation plan, and it includes a section detailing "drain tile identification, avoidance, and repair." The details of this avoidance and repair plan belie the argument that permanent damage would occur.

The Robinsons point out that the plan contemplates the relocation of tile if necessary, and they argue any relocation satisfies the permanency requirement needed for a taking. For support they look to a series of cases dealing with the involuntary relocation of overland access easements. *Robbins v. Archer*, 126 N.W. 936, 933–37 (Iowa 1910); *Dawson v. McKinnon*, 285 N.W. 258, 265 (Iowa 1939); *Bagley v. Petermeier*, 10 N.W.2d 1, 3 (Iowa 1943). These cases stand for the principle that "neither the owner of the dominant estate, nor the owner of the servient estate, may ordinarily change the location of all or part of a right of way . . . without consent of the other." *Bagley*, 10 N.W.2d at 3. Although, *Dawson* also notes when the location of an easement is indefinite, "all that the appellant is entitled to was a way which afforded her reasonable access." 285 N.W. at 265. The Robinsons' drainage tile has a current location, but the Robinsons offer no evidence that suggests the drainage tile has any contractual fixed location. And the plan submitted by Coggon Solar requires the integrity of any rerouted tile to be maintained. When it comes to natural drainage easements, the law only requires

"the natural flow or passage of the waters cannot be interrupted or prevented by the servient owner to the detriment or injury of the dominant proprietor." *Ditch*, 212 N.W.2d at 448. In examining the Robinsons' claim, we note that the sources they rely on deal with overland right of way easements, not natural drainage easements. It is unclear if the same principles apply to both.

Even so, the Robinsons' assertion that there is a taking here conflicts with the fact that it is not a certainty their tile would even be moved, and they presented no evidence to suggest a move will happen. As the district court noted "the taking is speculative at this time." The Robinsons argue the authorization to move the tile is all that is needed for a taking, and they point to recent United States Supreme Court precedent. *See Cedar Point Nursery v. Hassid*, 594 U.S. 139, 149–50 (2021). But this case dealt with a regulation which "appropriate[d] for the enjoyment of third parties the owners' right to exclude." *Id.* at 149. The uncertain future possibility that a drainage easement may be moved, but the flow of water not impeded, is not the same as an appropriation of the Robinsons' right to exclude. The Robinsons have not presented evidence to show a "permanent physical occupation of real property" has occurred or will occur. *See Molo Oil Co.*, 692 N.W.2d at 692. There has not been a taking of their property. We affirm the district court on this issue.

g. Changes in the Ordinance

Finally, the Robinsons argue that because the rezoning's "material terms were not read at three consecutive meetings," its passage was in violation of Linn

County Ordinance section 107-68(3)(g) and Iowa Code sections 335.6 and 331.302.

Linn County Ordinance section 107-68(3)(g) states "[a] rezoning and map amendment request requires consideration by the board of supervisors at three public meetings." Iowa Code section 335.6 states "the regulation, restriction, or boundary shall not become effective until after a public hearing, at which parties in interest and citizens shall have an opportunity to be heard." And Iowa Code section 331.302(6) states, "A proposed ordinance or amendment shall be considered and voted on for passage at two meetings of the board prior to the meeting at which it is to be finally passed, unless this requirement is suspended by a recorded vote of not less than a majority of the supervisors."

Our supreme court has concluded that when changes made to a zoning ordinance between meetings are "minor or formal," additional hearings are not required for passage. *Brackett v. City of Des Moines*, 67 N.W.2d 542, 546 (Iowa 1954). "An amendment which does not change the general purpose of an ordinance may be made during its passage." *Id.*

In this case, when originally proposed, the ordinance required a 300-foot setback between solar panels and neighboring property. At the first meeting, this was changed to a 1250-foot setback. In other words, 300-feet plus 900 additional feet which could be negotiated between landowners and Coggon Solar. At the final meeting, only a 300-foot setback was approved. The Robinsons argue the change from 1250 feet back down to 300 feet was a material change that required additional meetings. They also point to the waiving of a height requirement for the solar panels and the addition of a requirement for a vegetation screen.

These changes were minor or formal, and "[t]hey do not change the general purpose of the ordinance nor do they affect plaintiff's property." *See id.* For one, the minimum setback by ordinance in an agricultural district with a renewable energy overlay district is fifty feet. *See* Linn County Ordinance sections 107-149(f), 107-132(e)(3). And these changes did not alter the general purpose of the ordinance. The rezoning was to approve the building of a solar farm on the 750 acres, the altering of the size of the setback, the height of the panels, or the existence of a vegetative buffer do not alter that purpose. Further, the Robinson property is across the street and up the hill from the 750 acres, and they did not present evidence of the effect these changes may have on their property. The district court concluded that these changes were minor and whether they required additional meetings was fairly debatable. *See Residential & Agric. Advisory Comm.*, 888 N.W.2d at 43. We affirm the district court on this issue.

## IV. Conclusion

The district court applied the correct standard of review; the rezoning is not inconsistent with the county comprehensive plan; the overlay district established by the rezoning does not violate the uniformity requirement of Iowa Code section 335.4; the Board decision is not an illegal zoning of agricultural property under section 335.2; the Board decision does not violate Linn County Ordinance section 107-68(3)(g), Linn County Ordinance section 107-70(1)(i) does not illegally alter the county comprehensive plan; the rezoning is not a taking of the Robinsons' property, and the rezoning is not illegal. Accordingly, we affirm.

**AFFIRMED.**